# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. )      **Cr.A. No.: 1702004883**
)
)
)
CODY W. SHUTAK, )
)
      Defendant. )
)

William Raisis, Esquire
Office of the Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Richard Ferrara, Esquire
Ferrara & Haley
1716 Wawaset Street
Wilmington, DE 19806
*Attorney for the Defendant*

## MEMORANDUM OPINION

**RENNIE, J.**

On February 7, 2017, Defendant Cody W. Shutak ("Shutak") was arrested and charged with Driving Under the Influence ("DUI"), in violation of 21 *Del. C.* § 4177; Failure to Have Insurance Identification in Possession, in violation of 21 *Del. C.* § 2118; Improper U-Turn, in violation of 21 *Del. C.* § 4153; and Possession/Consumption of Marijuana for Personal Use, in violation of 16 *Del. C.* § 4764.[1] On March 7, 2017, Shutak entered a plea of not guilty. On June 12, 2017, Shutak moved to suppress evidence of his initial traffic stop and subsequent arrest. On August 10, 2017, the Court heard the Motion to Suppress ("Motion") and the trial. Following a hearing on the motion, the Court reserved its decision on the Motion, granted the State's motion to move all non-hearsay evidence into the record, and proceeded to trial on the merits. At the conclusion of trial, the Court again reserved decision. This is the Court's consolidated memorandum opinion on Shutak's Motion and decision after trial.

## BACKGROUND

The Court heard testimony and considered evidence during two phases of the DUI proceeding—the suppression hearing and DUI trial.[2] Based on the testimony presented at the suppression hearing and trial, the Court finds the facts to be as follows.

### A. Suppression Hearing Facts

At the suppression hearing, the Court heard testimony from three witnesses: Alan DeCampli ("DeCampli"), Trooper Demi Moore ("Trooper Moore") of the Delaware State Police, and Trooper First Class Mark Ivey ("Trooper Ivey") of the Delaware State Police.

On February 7, 2017, around 9:30 p.m., DeCampli was traveling north on Bear Corbitt Road, Route 7 in New Castle County, when he struck Shutak's vehicle that was obstructing the

---

[1] Before trial, the State entered a *nolle prosequi* for the failure to have insurance charge and possession of marijuana charges.

[2] The Court notes that hearsay evidence was only considered in Shutak's suppression hearing. *See* D.R.E. 1101(b)(1); *see also State v. Brown*, 2010 WL 2878246, at *2 (Del. Super. July 22, 2010).

roadway. DeCampli applied his brakes as soon as he noticed Shutak's vehicle but, because it was dark, he was unable to prevent his vehicle from colliding with the passenger side of Shutak's vehicle. Corporal Stephen Ballard ("Corporal Ballard"), of the Delaware State Police, was the first officer to respond to the accident scene.[3] Shutak's eyes were bloodshot and glassy and Corporal Ballard smelt burnt marijuana during his conversation with Shutak.[4] Corporal Ballard directed DeCampli to remain in his vehicle. Hence, DeCampli never saw the driver of the other vehicle; however, he testified on cross-examination that he had asked Corporal Ballard why the vehicle was stopped in the middle of the road. Corporal Ballard informed him that the driver attempted to make an illegal U-Turn, but was unable to complete the turn and was in the process of reversing when the accident occurred.

Trooper Moore, a five-year police veteran, was the second police officer to respond to the accident scene.[5] After arriving at the scene, Trooper Moore identified Shutak as the driver of the reversing vehicle. During the accident investigation, Corporal Ballard instructed Trooper Moore to inform family members of a passenger in Shutak's vehicle that the passenger had been transported to Christiana Hospital. Corporal Ballard then asked Shutak his name to which Shutak responded "Cody." Corporal Ballard then told Trooper Moore, "Cody is coming with me." It was at this time that Corporal Ballard spoke with DeCampli, and explained to him that Shutak had stopped in the middle of the road while attempting an illegal turn. Based on Shutak's

---

[3] The Court notes with particular sadness that Corporal Stephen J. Ballard ("Corporal Ballard"), an eight-and-a-half-year State Police veteran, was murdered in April when he approached a suspicious looking vehicle in a Wawa parking lot on Pulaski Highway. Because of this tragedy, the State was unable to call Corporal Ballard as a witness.

[4] This information is contained within the Drug Recognition Expert ("DRE") report of Trooper First Class Mark Ivey ("Trooper Ivey"), a certified Drug Recognition Expert ("DRE") assigned to the Delaware State Police Executive Protection Unit, which is discussed *infra*.

[5] Trooper Moore was present for the entire DUI investigation and testified that the Motor Vehicle Recording ("MVR"), which the State introduced into evidence, fairly and accurately depicted the events of that evening. Corporal Ballard can be heard calling out Trooper Moore's first name, "Demi," in the MVR.

3

role in causing the accident, the smell of burnt marijuana, and his bloodshot and glassy eyes, Corporal Ballard instructed him to exit the vehicle to conduct a DUI investigation.

Corporal Ballard administered three tests: the Horizontal Gaze Nystagmus ("HGN") test, the Walk-and-Turn test, and the One-Leg Stand test. After he administered the tests, he asked Shutak, "How long ago did you smoke marijuana?" Shutak responded, "Two hours ago." Corporal Ballard then asked, "Do you think you were under the influence when driving?" Shutak responded, "Possibly a little bit, but not much." Corporal Ballard continued, "Do you think you should have been driving?" Shutak replied, "I mean, yeah." Corporal Ballard then reiterated, "But you definitely felt that you were under the influence though?" Shutak replied "Yeah, yes sir." Following this conversation, Corporal Ballard informed Shutak that he believed Shutak was still under the influence and, therefore, would have to transport Shutak to the police station. Shutak was asked if he had any questions, to which he responded, "No." Corporal Ballard then handcuffed Shutak.[6]

Later that evening at approximately 10:18 p.m., Corporal Ballard paged Trooper Ivey, a certified Drug Recognition Expert ("DRE") assigned to the Delaware State Police Executive Protection Unit, for a DRE evaluation.[7] As part of his evaluation, Trooper Ivey interviewed Corporal Ballard for the DRE report. During this interview, Corporal Ballard told Trooper Ivey that he believed he had probable cause to arrest Shutak because: (1) Corporal Ballard smelled burnt marijuana during his conversation with Shutak, (2) Shutak's eyes were bloodshot and

---

[6] During the process of handcuffing Shutak, a brief conversation occurred during which Shutak admitted to smoking "straight weed." However, the Court did not consider this conversation in its analysis because no Miranda warnings were given during this custodial interrogation. *See Taylor v. State*, 23 A.3d 851, 852 (Del. 2011) ("We hold that a statement given by [a] witness who has been handcuffed and told that he is being arrested is presumptively involuntary unless the witness is given the same protections afforded to suspects who are in police custody."); *see also State v. Hernandez*, 2011 WL 2163419, at *6 (Del. Com. Pl. May 2, 2011) ("the Court finds that [the defendant] was in custody once he was placed in handcuffs").

[7] Trooper Ivey testified that he is certified by the International Association of Chiefs of Police as a Drug Recognition Expert, which requires ninety-six hours of classroom instruction in identification of impairment and forty hours of field certification.

4

glassy, (3) Shutak admitted that he had smoked marijuana two hours before the accident, (4) Shutak performed an illegal U-Turn and was struck by an oncoming vehicle, and (5) Shutak performed poorly on the standardized field sobriety tests.[8] After his interview with Corporal Ballard, Trooper Ivey questioned Shutak.

**B. Trial Facts**

At the trial phase of the proceeding, the State recalled Trooper Ivey to the stand to testify regarding his interview with Shutak post-arrest. Trooper Ivey read Shutak his *Miranda* rights at the central detention area of Delaware State Police Troop Two ("Troop Two"). After waiving his rights, Shutak spoke candidly. Shutak stated that he and his friend had "smoked marijuana in a blunt"[9]—approximately thirty minutes before the collision—and became hungry, so they decided to drive to Texas Roadhouse. Shutak admitted that he made an illegal U-Turn while traveling to Texas Roadhouse.

During the conversation, Trooper Ivey conducted a visual examination of Shutak. He testified that he smelled burnt marijuana on Shutak's breath and person, his face was flushed, his eyes were watery and bloodshot, his speech was slow and slurred, and, Trooper Ivey recorded Shutak's pulse at a rate of one-hundred and four.[10] Following the conversation, Trooper Ivey conducted the Horizontal Gaze Nystagmus test; Vertical Gaze Nystagmus test; Lack of

---

[8] In rebutting an assertion from defense counsel on cross-examination that Corporal Ballard had stated Shutak performed "well on the field tests," Trooper Ivey read into the record Corporal Ballard's Report regarding his DUI investigation. According to Corporal Ballard's report, Shutak exhibited two clues of impairment for the HGN test, two clues for the Walk-and-Turn test, and two clues for the One-Leg Stand test. Corporal Ballard's notes for the Walk-and-Turn test indicate that Shutak was walking at an angle, missed heel to toe for steps three, four and six, and on the second nine steps missed heel to toe on steps two, three, five, six, and seven. Likewise, his notes for the One-Leg Stand test indicate that Shutak rested his foot on the ground for seconds four, eleven, eighteen, twenty-seven, and twenty-eight. Despite the Shutak's assertion that Corporal Ballard had stated Shutak performed "well on the field tests," Trooper Ivey testified that he believed Corporal Ballard's report indicates poor performance based on Trooper Ivey's work as a police officer.

[9] Trooper Ivey testified that a "blunt" is commonly defined as a "rolled cigarette of marijuana."

[10] Trooper Ivey testified that an average pulse rate is between sixty and ninety. Trooper Ivey proceeded to record a second set of vital signs; however, Shutak's pulse, blood pressure and body temperature all registered within acceptable ranges.

Convergence test; Walk-and-Turn test; One-Leg stand test; Modified Rhomberg Balance Test; Finger-to-Nose test; and pupil dilation tests.[11]

Based on the results of Trooper Ivey's observations of Shutak, and his extensive experience as a police officer, he believed Shutak was impaired.

## ANALYSIS

### A. Motion to Suppress

On a Motion to Suppress, the State must prove by a preponderance of evidence that the underlying stop and subsequent arrest are based on sufficient evidence.[12] Shutak raised the following grounds for suppression in his motion: (1) the initial detention was not based on reasonable articulable suspicion, (2) the arrest was not supported by probable cause, (3) the NHTSA field sobriety tests were not conducted in accordance with NHTSA standards, (4) he was not read his Miranda rights when he made incriminating statements during custodial interrogation, (5) the search of his vehicle was conducted without the requisite probable cause, and (6) his blood was drawn without probable cause.[13] However, Defendant did not argue, or

---

[11] After Trooper Ivey described the post-conversation testing and Shutak's test performance in detail, Shutak's counsel objected to Trooper Ivey testifying as a D.R.E. because the State had not qualified him as an expert. The State responded that it was not asking Trooper Ivey his opinion as an expert, but as a police officer experienced in DUI detection. Shutak's counsel stated that the State's response satisfied his objection. Because the State did not proffer Trooper Ivey as an expert, but a police officer experienced in DUI detection, the Court did not consider the post-conversation tests beyond Trooper Ivey's "general overall observation[s]." *State v. Ministero*, 2006 WL 3844201, at *3 (Del. Super. Dec. 21, 2006) (ruling that the trial court could consider observational tests in its probable cause analysis despite the State not establishing the tests' scientific reliability). Phrased differently, the Court did not consider "'value-added descriptive language' or any 'scientific, technical or specialized information learned from law enforcement or traffic safety instruction.'" *State v. Brown*, 2003 WL 1826219, at *1 (Del. Com. Pl. Jan. 29, 2003). In fact, the State failed to present testimony or evidentiary support that the post-conversation tests were certified by the National Highway Traffic Safety Administration ("NHTSA"), or that Trooper Ivey followed NHTSA protocol when conducting these tests. The Court thus affords these tests limited weight.
[12] *See State v. Predeoux*, 2013 WL 5913393, at *1 (Del. Super. Nov. 4, 2013); *see also State v. Aklilu*, 2017 WL 66340, at *3 (Del. Com. Pl. Jan. 4, 2017).
[13] Shutak also argued at the suppression hearing, based on oral bench rulings in the Delaware Superior Court, that Trooper Ivey cannot destroy his field notes, even when he has transcribed those notes into his field report. Notably, Shutak failed to raise this issue in his Motion. Arguments are deemed waived when not raised in the motion to suppress. Ct. Com. Pl. Crim. R. 12; *see also Re: State v. Simpson*, 2017 WL 3605358, at *2 n.10 (Del. Super. Aug. 21, 2017). Regardless, defense counsel failed to provide support for these assertions and Delaware case law

present factual support for, grounds three, five, or six at the suppression hearing. Therefore, the Court will not address these arguments.[14]

### 1. Reasonable Articulable Suspicion

Shutak contends that Corporal Ballard did not have reasonable articulable suspicion to believe he had committed a crime. The Fourth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, protects individuals against unreasonable searches and seizures.[15] The Delaware Supreme Court has held, "[w]hen law enforcement directs a driver to stop her car, the State has 'seized' the car and its occupants, and the protections of the Fourth Amendment apply."[16] The State bears the burden of demonstrating that the stop was "reasonable under the circumstances," and the officer conducting the stop had "reasonable articulable suspicion that a crime had occurred, is occurring, or is about to occur."[17]

As part of his argument, Shutak contends that Corporal Ballard had no reasonable articulable suspicion to believe that a crime took place, and that the evidence before the Court is deficient to establish how the "incident occurred." The Court disagrees with Shutak's argument. Corporal Ballard stated that he heard the collision occur. Indeed, at approximately 19:20 minutes into the MVR, Corporal Ballard stated to Trooper Moore that his response time was "probably one of the quickest" because he was sitting in the parking lot across from the intersection where the collision occurred. Corporal Ballard stated to Trooper Moore that one of the vehicles attempted to make an illegal U-Turn and was hit when it was attempting to reverse while in the middle of the road. Also, at the suppression hearing, Trooper Moore identified

---

disagrees with this interpretation. *See State v. Noonan*, 2007 WL 1218032, at *3 (Del. Com. Pl. Jan. 31, 2007); *see also DeLoach v. State*, 2012 WL 2948188, at *4 (Del. Super. July 16, 2012).

[14] *See Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242-43 & n.12 (Del. 2004) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)) ("'[C]asual mention of an issue in [an appellate] brief is cursory treatment insufficient to preserve the issue. . . .'").

[15] U.S. CONST. amends. IV & XIV, § 1.

[16] *West v. State*, 143 A.3d 712, 716 (Del. 2016).

[17] *State v. Mulholland*, 2013 WL 3131642, at *3 (Del. Com. Pl. June 14, 2013).

Shutak as the driver of the reversing vehicle. Further, DeCampli testified that there was a collision between his vehicle and a second vehicle. He admitted that he did not see the driver of the other vehicle, but was informed by Corporal Ballard that the other driver was attempting to make a U-Turn when DeCampli hit Shutak's vehicle. This combined evidence is sufficient to prove how the collision occurred. In addition, because no "stop" occurred and Corporal Ballard arrived at the motor vehicle collision between Shutak and DeCampli, reasonable articulable suspicion was not required to investigate the stationary vehicles.[18] By law, Corporal Ballard had a duty to investigate the accident and Shutak had a duty to remain at the scene.[19]

Shutak also appears to argue that Corporal Ballard did not have reasonable articulable suspicion to proceed from an accident investigation to a DUI investigation. This argument also lacks merit. Shutak caused an accident; Corporal Ballard smelled burnt marijuana on Shutak's breath and person; and Shutak's eyes were glassy and bloodshot. These facts are sufficient evidence to establish a reasonable articulable suspicion for Corporal Ballard to proceed to a DUI investigation.[20]

---

[18] *See State v. Arterbridge*, 1995 WL 790965, at *2 (Del. Super. Dec. 7, 1995) (reasonable articulable suspicion not required to investigate a vehicle that appeared to have been involved in a one-vehicle accident).

[19] Police officers have a duty to investigate as "conservators of the peace" and under the Community Caretaker Doctrine. 11 *Del. C.* § 8302; *see also Dailey v. State*, 1986 WL 2280, at *2 (Del. Super. Feb. 10, 1986) (responding to an accident as a police officer is acting as a "conservator of the peace"); *Williams v. State*, 962 A.2d 210, 217 (Del. 2008) (recognizing the "modern police officer" as a "'jack-of-all-emergencies'" when adopting the community caretaker doctrine); *State v. Zambanini*, 2012 WL 4789764, at *1, 6 (Del. Com. Pl. Feb. 22, 2012) (applying the community caretaker doctrine to a disabled motor vehicle). Likewise, it is the duty of a driver involved in a collision that results in "apparent damage to property" to remain at the scene of the collision. 21 *Del. C.* § 4201(a).

[20] *See State v. Rothenberg*, 2017 WL 2257381, at *3 (Del. Super. May 22, 2017) (odor of alcohol and traffic offense justified proceeding to field sobriety tests); *State v. Wise*, 2016 WL 7468058, at *4 (Del. Super. Dec. 22, 2016) ("Before beginning the pre-exit tests, the officer observed that [defendant] had a moderate odor of alcohol and had rear-ended another vehicle at a stop sign. That alone would create a reasonable and articulable suspicion that DUI had been committed."); *State v. Lane*, 2014 WL 904785, at *3 (Del. Com. Pl. Mar. 10, 2014) (Rennie, J.) (one-vehicle accident, odor of alcohol, and admission by defendant that another person warned her of driving drunk satisfied reasonable articulable suspicion to proceed to a DUI investigation); *State v. Smallwood*, 2012 WL 4788248, at *3 (Del. Com. Pl. May 16, 2012) (motor vehicle accident, smell of alcohol, and defendant's "'lethargic' state" satisfied reasonable articulable suspicion); *State v. Hopper*, 2010 WL 11508217, at *4-5 (Del. Com. Pl. Oct. 1, 2010) (smell of marijuana and alcohol, "watery, glazed, glassy eyes" satisfied reasonable articulable suspicion after defendant was stopped because of tinted windows and marijuana smoke); *State v. Laphen*, 1996 WL 35045247, at

8

## 2. *Probable Cause*

Shutak also challenges his arrest, arguing that Corporal Ballard did not have probable cause to arrest him for driving under the influence based on the totality of circumstances. The probable cause standard is well established in Delaware:

> [P]robable cause is an "elusive concept which . . . lies somewhere between suspicion and sufficient evidence to convict." Probable cause exists when "an officer possesses information which would warrant a reasonable man in believing that such a crime has been committed." In the context of DUI offenses, the arresting officer must possess facts which, when viewed in the totality of the circumstances, suggest a fair probability that the defendant was driving under the influence. In essence, the State has to establish that the arresting officer "possess[ed] a quantum of trustworthy factual information sufficient to warrant a man of reasonable caution in believing a DUI offense ha[d] been committed." Generally, probable cause to arrest a driver for a DUI offense is measured by the arresting officer's observations of the defendant, including the defendant's performance on field sobriety tests."[21]

Shutak argues that certain evidence relied upon by the State to establish probable cause should be excluded and, if excluded, would vitiate a finding of probable cause to arrest him for DUI. Specifically, during the hearing, Shutak argued the following: (a) his incriminating statements after Corporal Ballard informed Trooper Moore, "Cody is coming with me," should be excluded because Corporal Ballard's statement initiated a custodial interrogation; (b) the MVR should be excluded because the State did not establish its chain of custody; and (c) the Confrontation Clause of the Sixth Amendment to the United States Constitution prevents the introduction of Shutak's answers to Corporal Ballard's questions on the MVR because Corporal Ballard was unavailable as a witness. The Court will address these arguments in turn.

---

*1 (Del. Com. Pl. Dec. 23, 1996) (reasonable articulable suspicion satisfied for DUI investigation based on defendant being the driver, odor of alcohol, bloodshot eyes, and reddish cheeks).
[21] *State v. Diver*, 2017 WL 2558265, at *4 (Del. Com. Pl. June 13, 2017) (internal footnotes omitted) (quoting *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011); *Altizer v. State*, 2017 WL 111729, at * 4 (Del. Super. Jan. 11, 2017); *Rybicki v. State*, 119 A.3d 663, 670 (Del. 2015)).

*a. Corporal Ballard's statement during the accident investigation does not constitute placing Shutak in custody.*

The Court disagrees with Shutak's assessment that Corporal Ballard's statement—"Cody is coming with me"—initiated a custodial interrogation. First, the context of the conversation does not support Shutak's argument that Corporal Ballard was indicating to Trooper Moore that he was placing Shutak in his police car. Corporal Ballard had just informed Trooper Moore that she should advise a passenger's family that the passenger was transported to Christiana Hospital. Thus, in that context, the statement "Cody is coming with me" indicated Shutak was remaining at the scene to continue his investigation, and not traveling to the hospital. Indeed, Corporal Ballard did not place Shutak in his police vehicle, but proceeded to initiate a DUI investigation by administering field sobriety tests.

Second, *Miranda* was not required since it is clear from the context and circumstances surrounding Corporal Ballard's statement that he did not place Shutak in a "custodial setting."[22] A police officer is not required to read a defendant his *Miranda* rights unless the defendant is "(i) in custody or in a custodial setting, and (ii) the questioning [] rise[s] to the level of an interrogation."[23] Under Delaware law, a defendant is in custody "when, under the totality of the circumstances, a reasonable person in the same position would not feel free to leave."[24] Importantly, the test for determining custody is objective and does not depend on the investigating officer's intent.[25] An interrogation occurs when the police officer questions the

---

[22] *Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010).
[23] *Id.*
[24] *State v. Dickens*, 2013 WL 6039202, at *2 (Del. Super. Oct. 8, 2013).
[25] *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time."); *see also id.*; *State v. Brotman*, 1991 WL 138421, at *4 (Del. Super. July 11, 1991) ("Such a suspicion does not equate with custodial interrogation, especially when unaccompanied by an unarticulated intent to detain the defendant"); *State v. Hernandez*, 2011 WL 2163419, at *6 (Del. Com. Pl. May 2, 2011).

10

defendant or the police officer acts or makes statements that the officer "should know are reasonably likely to elicit an incriminating response from the suspect."[26]

The Delaware Supreme Court has held that the presence of a police officer at the scene of a motor vehicle accident coupled with the defendant's duty to stay at the scene does not trigger *Miranda*.[27] This Court has recently held that "the mere fact of an accident and a DUI investigation does not implicate *Miranda*."[28] Therefore, non-accusatory statements during an accident investigation do not trigger *Miranda*.[29] Here, the duty of Shutak to remain at the scene of the accident, Corporal Ballard's statement which was directed at another officer, and Corporal Ballard proceeding to a DUI investigation did not place Shutak "in custody" for purposes of *Miranda*.

b. *The MVR was properly authenticated when Trooper Moore testified as a witness with personal knowledge regarding the events depicted in the recording.*

At the suppression hearing, Shutak relied on *Masarone v. State* for the proposition that the State must establish chain of custody for the MVR. However, *Masarone* does not require the State to authenticate the MVR through chain of custody if a witness with personal knowledge testifies to the authenticity of the evidence.[30] The Delaware Supreme Court stated, "[a] party may authenticate physical evidence *either* by establishing a chain of custody, which establishes the continuous whereabouts of the evidence, *or* by having a witness with knowledge testify that the evidence is what it is claimed to be."[31] The Supreme Court addressed both arguments in

---

[26] *Dickens*, 2013 WL 6039202, at *2 (quoting *Tolson v. State*, 900 A.2d 639, 643-44 (Del. 2006)).
[27] *See Fuentes v. State*, 2002 WL 32071656, at *2 (Del. Dec. 30, 2002).
[28] *State v. Aklilu*, 2017 WL 66340, at *6 (Del. Com. Pl. Jan. 4, 2017); *see also State v. Mauk*, 2014 WL 4942177, at *4 (Del. Super. Sept. 29, 2014).
[29] *See State v. Kang*, 2001 WL 1729126, at *5 (Del. Super. Nov. 30, 2001).
[30] *See Masarone v. State*, 91 A.3d 562, 2014 WL 1515038, at *2 (Del. Apr. 16, 2014) (TABLE).
[31] *Id.* (emphasis added).

*Masarone* only because the defendant asserted that the State "could neither authenticate the MVR nor establish its chain of custody."[32]

In *Masarone*, Corporal Jenney, Trooper Coleman, and Lieutenant Haden responded to a general broadcast that a vehicle was swerving in and out of traffic.[33] The officers found the driver passed out in the vehicle, the vehicle in drive, and the driver's foot depressing the brake.[34] Trooper Rowley also responded to the broadcast, but by the time he arrived the defendant was sitting in Lieutenant Haden's patrol car.[35] Trooper Rowley transported the defendant to Sussex Correctional Institution.[36] While en route, the defendant made incriminating statements.[37] Corporal Jenney, Trooper Coleman, and Trooper Rowley were the only responding officers to testify at trial because Lieutenant Haden was on administrative leave.[38]

The defendant objected to the admission of the MVR since Lieutenant Haden was on administrative leave and, therefore, unavailable to testify regarding his vehicle's MVR.[39] The defendant's admissibility argument was bifurcated; the defendant argued that Lieutenant Haden's unavailability prevented him from authenticating the MVR or establishing its chain of custody. Regarding authentication by a witness with knowledge of the dash camera in Lieutenant Haden's vehicle, the Court ruled, "[w]ith respect to the recorded events occurring in front of the patrol car, the State properly authenticated the MVR by having Trooper Rowley and Corporal Jenney testify that the MVR, which they viewed before trial, accurately depicted what they had

---

[32] *Id.*
[33] *Id.* at *1.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*

witnessed at the scene."[40] The Supreme Court in *Masarone* was satisfied that the MVR had been authenticated by police officers who were present for the DUI investigation.

In the present case, Trooper Moore authenticated the MVR by stating that it fairly and accurately depicted the events of that evening. She further stated that she was present prior to the DUI investigation, remained for the entire investigation, and had reviewed the MVR prior to testifying before the Court. This is corroborated by the MVR. Trooper Moore first appears on the recording at approximately 19:20 minutes, where Corporal Ballard calls "Demi" before Corporal Ballard advises her to inform the passenger's family members that he was transported to Christiana Hospital. She is then seen during the administering of the field sobriety tests, and is last heard after Corporal Ballard had arrested Shutak. The evidence in the present case satisfies the standard for authentication of the MVR as articulated in *Masarone*.

c. *The Confrontation clause is not applicable to a suppression hearing.*

The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment,[41] affords a defendant the right to confront the witnesses against him or her.[42] However, Shutak provides no precedent, and the Court is unaware of any case law, that supports the argument that the Confrontation clause applies to a suppression hearing. To the contrary, in *State v. Brown*, the Superior Court held, "[t]he case law is clear that the confrontation rights addressed in *Crawford* apply only to criminal trials, and do not extend to suppression hearings."[43] Thus, precedent does not support Shutak's argument.

---

[40] *Id.* at *2.
[41] *See Milligan v. State*, 116 A.3d 1232, 1236 (Del. 2015).
[42] U.S. CONST. amend. VI; *see also Ayers v. State*, 97 A.3d 1037, 1038 (Del. 2014).
[43] *State v. Brown*, 2010 WL 2878246, at *2 (Del. Super. July 22, 2010) (citing *State v. Cleveland*, 2006 WL 2441971, at *3 (Del. Super. Aug. 16, 2006) (addressing the inapplicability of *Crawford v. Washington*, 541 U.S. 36 (2004), to a suppression hearing)).

Because the Court finds Shutak's arguments against admissibility unpersuasive, the following evidence remains to support probable cause: (1) Shutak caused the accident, (2) the smell of burnt marijuana was present on his breath and person, (3) his eyes were glassy and bloodshot, (4) he admitted to smoking marijuana two hours prior to driving, and (5) he admitted to being under the influence while driving.[44] After considering the totality of the evidence in the record, the Court finds that Corporal Ballard had probable cause to arrest Shutak.[45]

## CONCLUSION

For the foregoing reasons, Shutak's Motion to Suppress is DENIED.

### B. DUI Trial

Having Denied Shutak's Motion to Suppress, the Court now addresses the charges of DUI and illegal U-Turn.[46] Title 11 *Del. C.* § 4177(a)(2) provides that, "[n]o person shall drive a vehicle . . . when the person is under the influence of any drug." Section 4177(c)(6) defines "Drug" as including "any substance or preparation defined as such by Title 11 or Title 16 or which has been placed in the schedules of controlled substances pursuant to Chapter 47 of Title

---

[44] While Trooper Ivey testified at the suppression hearing that Corporal Ballard's report indicates that Shutak performed poorly on the HGN test, the Walk-and-Turn test, and the One-Leg Stand test, the State agreed that because the record is devoid of testimony concerning the scientific principles underlying the field sobriety tests, the Court should only consider the tests in light of its observation. Thus, the Court affords these tests "only the weight of simple observation." *Aklilu*, 2017 WL 66340, at *6.

[45] *See Bease v. State*, 884 A.2d 495, 499-500 (Del. 2005) (affirming the finding of probable cause when defendant "spoke in a rapid manner to Trooper Penrod, smelled of alcohol, admitted that he consumed alcoholic beverages the night before, had bloodshot and glassy eyes, and had just committed a traffic violation by making an improper lane change in an abrupt manner."); *see also id.* (finding probable cause based on a "traffic accident, bloodshot, glassy, and watery eyes, an odor of alcohol and an admission of drinking"); *State v. Diver*, 2017 WL 2558265, at *4 (Del. Com. Pl. June 13, 2017) (finding probable cause when defendant committed a traffic violation, the officer detected an odor of alcohol, defendant's eyes were bloodshot and glassy, defendant admitted to drinking prior to driving, defendant's speech was mumbled, and defendant performed poorly on two field sobriety tests).

[46] *See* 21 *Del. C.* § 4153 ("(a) No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within 500 feet. (b) The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic.").

14

16."[47] Section 4177(c)(11) defines "while under the influence" to mean "that the person is, because of alcohol or drugs . . . , less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle."[48] In order for a defendant to be found guilty under § 4177, the State must prove, beyond a reasonable doubt, that the defendant was driving and that he was under the influence of alcohol or drugs while he was driving.[49]

At trial, the State sought to satisfy its burden to establish DUI through an impairment theory. Delaware law does not require the State to introduce chemical testing to prove the defendant was driving under the influence.[50] The State is only required to introduce evidence that "the defendant was less able to properly operate a vehicle" because he was under the influence.[51] Impairment may thus be established by circumstantial evidence of the substance's influence on a defendant's conduct, demeanor, and statements.[52] The State, however, still needs to meet its burden to prove impairment beyond a reasonable doubt.[53] "Reasonable doubt does not mean a vague, speculative doubt, nor a mere possible doubt, but a substantial doubt; it is such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful and conscientious consideration of the evidence in the case."[54] For the State to meet its burden, "the facts established by such evidence must be such as to exclude any other reasonable conclusion."[55]

---

[47] Marijuana is included in Chapter 47 of Title 16.
[48] 21 *Del. C.* § 4177(c)(11).
[49] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).
[50] *See Stevens v. State*, 110 A.3d 1264, 1271 (Del. Super. 2015).
[51] *See id.*
[52] *Church v. State*, 11 A.3d 226, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010) (TABLE).
[53] *State v. Smith*, 2011 WL 6935626, at *5 (Del. Com. Pl. Dec. 29, 2011).
[54] *State v. Matushefske*, 215 A.2d 443, 449 (Del. Super. 1965).
[55] *Smith*, 2011 WL 6935626 at *5.

Shutak argues that the State cannot prove beyond a reasonable doubt that he was driving. Yet, Decampli testified that he collided with Shutak's vehicle while it was attempting to reverse. Likewise, Trooper Moore, who was present during the accident and DUI investigations, identified Shutak as the driver of the reversing vehicle. In addition, during his post-arrest interview with Trooper Ivey at Troop Two, Shutak admitted to making an illegal U-Turn while driving under the influence. Thus, the Court finds that the State has met its burden of proving, beyond a reasonable doubt, that Shutak was driving and made an illegal U-Turn.

Next, Shutak argues that the State has failed to meet its burden of establishing that he was under the influence of drugs while driving. Trooper Ivey testified that he smelled burnt marijuana while interviewing Shutak, Shutak's face was flushed and his eyes were watery and bloodshot, his speech was slow and slurred, his pulse rate was high, and Shutak admitted that he had smoked marijuana thirty minutes before causing the accident. Based on the evidence in the record, the Court finds that the State has met its burden of proving that Shutak was driving under the influence of marijuana. Further, based on the record evidence, the Court finds that Shutak's impaired state negatively affected his driving ability. Therefore, the State has met its burden of proving beyond a reasonable doubt that Shutak was impaired while driving his vehicle.

## CONCLUSION

The State has met its burden of proving beyond a reasonable doubt that Shutak, at the date and time set forth in the Information, was driving under the influence of drugs, in violation of 11 *Del. C.* § 4177, and made an improper U-Turn, in violation of 21 *Del. C.* § 4153. Thus, the Court finds Defendant Cody W. Shutak **GUILTY**.

**IT IS SO ORDERED THIS 29th day of September, 2017.**

Sheldon K. Rennie,
Judge

17