# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DASHAWN AYERS | § | |
| | § | No. 646, 2013 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Kent County |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 1208001950 |
| Plaintiff Below, | § | |
| Appellee. | § | |

_____

| | | |
|---|---|---|
| MICHAEL E. DEMBY, | § | |
| | § | No. 667, 2013 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware, |
| | § | in and for Kent County |
| STATE OF DELAWARE | § | |
| | § | Cr. I.D. No. 1206011513 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: June 11, 2014
Decided: July 21, 2014

Before **STRINE**, Chief Justice, **BERGER** and **RIDGELY**, Justices.

Upon appeal from the Superior Court. **AFFIRMED** in part, **REMANDED** in part.

Benjamin A. Schwartz, Esquire (*argued*), Schwartz & Schwartz, Attorneys at Law, P.A., Dover, Delaware for Appellant Dashawn Ayers.

André M. Beauregard, Esquire (*argued*), Brown, Shiels & Beauregard, LLC, Dover, Delaware for Appellant Michael E. Demby.

Andrew J. Vella, Esquire (*argued*), Department of Justice, Wilmington, Delaware, for Appellee State of Delaware.

**BERGER**, Justice:

In this consolidated appeal we consider, among other things, whether the admission of wiretap recordings in a criminal trial violated appellants' confrontation rights under our state or federal constitutions. Appellants contend that the recordings were "testimonial" because two witnesses explained the meaning of the codes used in the recorded conversations, and appellants were unable to cross-examine the declarants about the coded language. We hold that the wiretap recordings, used to prove that appellants committed the crime of conspiracy, were admissible. There was no constitutional violation, and the appellants' remaining arguments lack merit. Accordingly, the judgments of conviction are affirmed.

**Factual and Procedural Background**

In May and June 2012, the Delaware State Police led a multi-agency law enforcement team that was investigating drug sales in Kent County, Delaware. The team used wiretaps to monitor communications by Galen Brooks, the target of the investigation. On May 26, 2012, the police heard a phone conversation between Brooks and Michael Demby, which led them to believe that a drug deal was about to take place. Based on that call, the police established surveillance at the McKee Crossing Shopping Center, and at Brooks's father's home on Red Oak Drive in Dover. In the next call, the police heard Brooks telling Demby to prepare a package of cocaine and to bring it to the buyer, who would be driving a Dodge

Caravan. Brooks told Demby that the price was $2400. The police saw Demby leave the Red Oak Drive home and place a package in the trunk of a Honda parked at the house. Demby and Brooks' brother, James, then got into the Honda and drove off.

At the McKee Crossing Shopping Center, the police saw Dashawn Ayers seated in a Dodge Caravan in the parking lot. Demby and James arrived in the Honda and parked next to the Caravan. Demby got out of the Honda and got into the Caravan, while James went into a store in the shopping center. After a few minutes, Demby got out of the Caravan and went into the store James had entered. Shortly thereafter, the two men left the store, returned to the Honda, and drove away. Ayers, driving the Caravan, also left the parking lot.

One of the officers in the surveillance unit that was following Ayers instructed Delaware State Police Corporal Timothy Valeski to conduct a traffic stop on the Caravan. Ayers produced his license, but when Valeski told him to exit the car, Ayers put the Caravan in gear and fled before the police could search it. Valeski was instructed not to pursue Ayers for public safety reasons.

After the meeting at the shopping center, the police contrived to monitor Brooks' phone conversations. Demby called Brooks and told him that everything had gone well and that he had the money. Brooks told Demby to keep $100 for his participation and to give the remaining $2300 to Valerie Brooks, his mother.

4

Valerie called Brooks a few minutes later to tell him that she received the money. Brooks told his mother to keep $50 for herself.

Ayers turned himself in to the Delaware State Police on June 1, 2012, stating that he knew he had outstanding warrants. The next day, Brooks and Demby had a telephone conversation in which Brooks agreed to give Demby one ounce of cocaine for the good work Demby had done. Police later observed an exchange of money between the two men. On June 14, 2012, the Delaware State Police arrested Demby. A Kent County Grand Jury returned an indictment against Ayers, Demby, Brooks, and 11 other individuals. Ayers was charged with one count of Drug Dealing, one count of Aggravated Possession, and one count of Conspiracy Second Degree.[1] Demby was charged with two counts of Drug Dealing, two counts of Aggravated Possession, two counts of Conspiracy Second Degree, one count of Criminal Solicitation Second Degree, and one count of Possession of Drug Paraphernalia.

Before trial, Ayers and Demby unsuccessfully moved to suppress the wiretap evidence. Ayers also filed a Motion to Sever, which was denied. The jury convicted Ayers on all counts. Demby was convicted of one count of Drug Dealing, one count of Aggravated Possession, one count of Conspiracy Second Degree, and one count of Possession of Drug Paraphernalia. He was acquitted on

---

[1] Ayers and Demby also were charged with one count of Racketeering, but the State entered a *nolle prosequi* on those charges before trial.

5

the remaining charges.  Ayers and Demby filed separate appeals, which were consolidated for consideration and decision.[2]

## Discussion

The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article I, Section 7 of the Delaware Constitution, similarly, provides that "the accused hath a right . . . to meet the witnesses in their examination face to face." Ayers argues that the admission of the wiretap recordings violated his confrontation rights under both constitutions.  Settled law defeats this claim.

In *Crawford v. Washington*,[3] the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[4]  In *Jones v. State*,[5] this Court explained the circumstances under which a statement is "testimonial" for purposes of the Confrontation Clause:

> [A] statement is testimonial and implicates the Confrontation Clause where it is given in non-emergency circumstances and the declarant would recognize that his statements could be used against him in subsequent formal proceedings.  By contrast, a casual remark to an acquaintance is a nontestimonial statement.  Similarly, . . . statements

---

[2] The two appellants will be referred to collectively as Ayers, unless the context requires differentiation.

[3] 541 U.S. 36 (2004).

[4] *Id*. at 53-54.

[5] 940 A.2d 1 (Del. 2007).

made in furtherance of a conspiracy are nontestimonial.[6] The wiretap recordings are not testimonial under the Sixth Amendment because the declarants obviously did not expect their statements to be used against them, and because the statements were made in furtherance of a conspiracy.

Ayers argues that, even if the wiretap recordings would be nontestimonial in other circumstances, this case is different because Special Agent Jeffrey Dunn, and another officer, told the jury what the coded language in the wiretaps meant. For example, in the wiretap, a person says, "Take three germs and put it on the scizzy." Dunn testified that "three" refers to three grams of cutting material that is added to the cocaine before sale, and that a "scizzy" is a scale.[7] Dunn also testified that the price per ounce was consistent with the price of cocaine in that location at that time.

Ayers complains that he was unable to confront the declarants to determine whether Dunn had correctly interpreted the conversation. But Dunn's interpretive testimony did not change the nontestimonial nature of the wiretap recordings. It is true that Dunn may have misinterpreted the coded language, but his interpretation was open to challenge during cross-examination. In addition, Ayers could have presented his own witnesses to testify that the wiretap recordings meant something entirely different. In sum, admission of the wiretap recordings did not violate the

---

[6] *Id*. at 12-13 (internal quotations and citations omitted).
[7] Appellee's Appendix at B-28-29.

Sixth Amendment.

Alternatively, Ayers claims that the wiretap recordings violate his confrontation rights under the Delaware Constitution. He says that the right to "examine witnesses face to face"[8] means just that. Under Ayers' view, the Delaware Constitution would preclude all hearsay evidence. This Court rejected the same argument in *McGriff v. State*:[9]

> A strict reading of the phrase "face to face" would virtually foreclose the State's ability to admit hearsay testimony against a criminal defendant, including those statements determined to be particularly trustworthy, substantially eliminating many exceptions to the rule prohibiting hearsay . . . . The right to meet witnesses "face to face" is not mandatory in all circumstances; rather, Article I, § 7 expresses a preference for "face to face" confrontation in accordance with the law of the land – due process. That preference must yield in those hearsay situations that are consistent with due process: firmly rooted exceptions and hearsay statements that have particularized guarantees of trustworthiness.[10]

Ayers' remaining claims also are unavailing. He says that the wiretap recordings should not have been admitted because the trial court failed to follow proper procedure. Under Delaware Rule of Evidence (D.R.E.) 801(d)(2)(e), a statement is not hearsay if made by a co-conspirator during the course and in furtherance of the conspiracy. The Rule requires, however, that "the conspiracy has first been established by the preponderance of the evidence to the satisfaction

---

[8] Del. Const. Art. I, § 7.
[9] 781 A.2d 534 (Del. 2001).
[10] *Id*. at 541-42 (internal citation omitted).

8

of the court."[11]  To satisfy this requirement, the trial court conducted a *voir dire* examination of Lloyd outside the presence of the jury.  Lloyd testified about the content of the wiretaps, the subsequent surveillance of the parties, and the circumstantial evidence indicating that a drug transaction did take place in accordance with the plan discussed in the wiretaps.  Based on this proffer, the trial court ruled that the existence of a conspiracy had been established by a preponderance of the evidence.

Ayers complains that the trial court should have admitted the wiretap recordings "provisionally" and should have made finding as to the existence of a conspiracy and the members of the conspiracy at the end of the trial.  There is no such rigid requirement under Delaware law.  In *Harris v. State*,[12] this Court held:

> Even if the trial court had enunciated an incomplete standard or failed to articulate all three elements of the co-conspirator exception, the record indicates that the trial court did not abuse its discretion in its evidentiary ruling.  The evidence clearly established that:  1) a conspiracy existed; 2) [the defendant and other named participants] were members of the conspiracy; and 3) [the co-conspirators'] statements were made during and in furtherance of the conspiracy.[13]

The same analysis applies in this case, and the record indicates that the trial court did not abuse its discretion in admitting the wiretap recordings.  The record establishes that there was a conspiracy between Demby, Ayers, Brooks, and Valerie Brooks and that the wiretap statements were made during and in

---

[11] D.R.E. 801(d)(2)(e).
[12] 695 A.2d 34 (Del. 1997).
[13] *Id*. at 42.

furtherance of the conspiracy.

Ayers raises two additional claims unrelated to the wiretap evidence. First, he claims that the State violated the Double Jeopardy Clause by indicting him on separate charges of Drug Dealing and Aggravated Possession. But the two offenses do not include all the same elements. The offense of Drug Dealing, 16 *Del. C.* § 4752(1), requires proof that the defendant delivered or possessed with the intent to deliver 20 or more grams of cocaine. The offense of Aggravated Possession, 16 *Del. C.* § 4752(3), requires proof that the defendant knowingly possessed 25 or more grams of cocaine. In other words, Drug Dealing requires an intent to deliver a smaller quantity of cocaine, whereas Aggravated Possession requires only possession, but of a larger quantity of cocaine. Although Ayers' Double Jeopardy claim lacks merit, the State acknowledges that the two crimes merge for purposes of sentencing. Accordingly, we remand for the sole purpose of merging the two charges and resentencing.

Finally, Ayers alone appeals the trial court's denial of his Motion to Sever. In deciding whether to grant a motion to sever, the trial court should consider: "(1) problems involving a co-defendant's extra-judicial statements; (2) an absence of substantial independent competent evidence of the movant's guilt; (3) antagonistic defenses . . . ; and (4) difficulty in segregating the State's evidence

as between the co-defendant and the movant."[14]  Ayers contends that there would be difficulty in segregating the State's evidence because he was involved in only the first of the two drug transactions discussed in the wiretap recordings.  Ayers says that evidence of the second transaction prejudiced him.  Also, for the first time on appeal, Ayers contends that he was deprived of the right to call Demby as a witness.

We find no abuse of discretion in the trial court's denial of the Motion to Sever.  Ayers had the burden of demonstrating "a reasonable probability that substantial injustice may result from a joint trial."[15]  There is no reason why a jury could not differentiate between the two drug deals, and the State did not suggest that Ayers was involved in the second one.  Thus, there is no reason to believe that Ayers would be substantially prejudiced.  The untimely claim that Ayers was deprived of calling Demby as a witness is even weaker.  In separate trials, Demby could not be required to testify.  If called as a witness, Demby most likely would have invoked his Fifth Amendment right not to incriminate himself, given his decision not to testify at the trial.  Ayers presented nothing to suggest otherwise.

---

[14] *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999).
[15] *Bates v. State*, 386 A.2d 1139, 1141 (Del. 1978).

## Conclusion

Based on the foregoing, this matter is remanded for resentencing on the merged offenses of drug dealing and aggravated possession. In all other respects, the judgments of conviction are affirmed. Jurisdiction is not retained.