# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID No. 1205025968A |
| | : | In and for Kent County |
| v. | : | |
| | : | RK12-06-0541-01 DDeal Tier 4 (F) |
| ANSARA M. BROWN, | : | RK 12-09-0213-01 CCDW (F) |
| | : | RK12-09-0214-01 PDWDCF (F) |
| Defendant. | : | RK12-09-0216-01 Consp 2nd (F) |
| | : | RK 12-09-0211-01 PossMarj+AF(M) |

## ORDER

Submitted: March 22, 2018
Decided: April 6 2018

On this 6th day of April, 2018 upon consideration of Defendant Ansara Brown's ("Mr. Brown's") Motion for Postconviction Relief, the Commissioner's Report and Recommendation (the "Report"), Mr. Brown's appeal, and the record in this case, it appears that:

1. Mr. Brown was found guilty, following a jury trial on September 11, 2013, of one count of Drug Dealing Tier 4, 16 *Del. C.* § 4752(1); one count of Possession of Marijuana with Aggravating Factors, 16 *Del. C.* § 4764(1); one count of Tier 5 Possession, 16 *Del. C.* § 4752(3); one count of Carrying a Concealed Deadly Weapon, 11 *Del. C.* § 1442; one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447; one count of Conspiracy in the Second Degree, 11 *Del. C.* § 512; and one count of Criminal Solicitation in the Second Degree, 11 *Del. C.* § 502.

2. On October 17, 2013, the State filed a motion to declare Mr. Brown an habitual offender. The Court granted the motion on October 30, 2013 and sentenced him to life in prison on both the Drug Dealing and Tier 5 Possession of Cocaine charges. On the remaining charges, the Court sentenced Mr. Brown to a total of twenty-seven years unsuspended time.

3. Mr. Brown filed a timely Notice of Appeal to the Delaware Supreme Court. At oral argument, Mr. Brown's counsel raised the issue before the Supreme Court that one of the Office of Chief Medical Examiner's employees who had handled the evidence seized in his case had been indicted for improper conduct in evidence handling. The Supreme Court remanded the case permitting Mr. Brown to file a Motion for New Trial. On remand, the Superior Court denied the motion. After further appellate proceedings, the Delaware Supreme Court found no merit in any of Mr. Brown's claims and affirmed his conviction and sentence.

4. Mr. Brown then filed his initial postconviction motion on October 2, 2015 and several amended motions thereafter. His appointed counsel ultimately filed a motion to withdraw because he concluded that the motion was without merit and that no meritorious grounds for relief existed. The Court granted that motion on May 9, 2017. Mr. Brown then supplemented his Rule 61 motion and after several revised briefing schedules, the Commissioner considered his amended motion.

5. The Commissioner recommended in her Report that the Court deny Mr. Brown's Motion. The Court has reviewed the Report and considered Mr. Brown's appeal challenging the Report, which raises no new issues.

**NOW, THEREFORE,** after a *de novo* review of the record in this action, review of the Report, and considering Mr. Brown's appeal challenging the Report;

**IT IS HEREBY ORDERED** that the Commissioner's Report and Recommendation attached as Exhibit "A" is adopted by the Court in its entirety. Accordingly, Mr. Brown's Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 is **DENIED**.

/s/Jeffrey J Clark
Judge

2

# Exhibit A

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | In and for Kent County |
| | ) | |
| v. | ) | RK12-06-0541-01 DDeal Tier 4 (F) |
| | ) | RK12-09-0213-01 CCDW (F) |
| ANSARA M. BROWN, | ) | RK12-09-0214-01 PDWDCF (F) |
| | ) | RK12-09-0216-01 Consp 2nd (F) |
| Defendant. | ) | RK12-09-0211-01 Poss Marij+AF (M) |
| ID No. 1205025968A | ) | |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Amended Motion for Postconviction Relief Pursuant to Superior Court Criminal Rule 61

Nicole S. Hartman, Esquire, Deputy Attorney General, Department of Justice, for the State of Delaware.

Ansara M. Brown, *Pro se*.

FREUD, Commissioner
February 2, 2018

The defendant, Ansara M. Brown ("Brown") was found guilty, following a jury trial on September 11, 2013, of one count of Drug Dealing Tier 4, 16 *Del. C.* § 4752(1); one count of Possession of Marijuana with Aggravating Factors, 16 *Del. C.*

C. § 4764(1); one count of Tier 5 Possession, 16 *Del. C.* § 4752(3); one count of Carrying a Concealed Deadly Weapon, 11 *Del. C.* § 1442; one count of Possession of a Deadly Weapon During the Commission of a Felony, 11 *Del. C.* § 1447; one count of Conspiracy in the Second Degree, 11 *Del. C.* § 512 and one count of Criminal Solicitation in the Second Degree, 11 *Del. C.* § 502. Prior to trial the State severed one count of Possession of a Deadly Weapon By a Person Prohibited and entered *nolle prosequis* for one count of Possession of Marijuana and one count of Racketeering. On October 17, 2013 the State filed a motion to declare Brown an habitual offender. The Court granted the motion on October 30, 2013 and sentenced Brown to life in prison on both the Drug Dealing and Tier 5 Possession of Cocaine charges. On the remaining charges he was sentenced to a total of twenty-nine years and six months, suspended after serving twenty-seven years Level V, for probation.[1]

A timely Notice of Appeal was filed with the Delaware Supreme Court by Brown's Trial Counsel. In the appeal the following claims were raised: (1) that the trial court abused its discretion in admitting the evidence obtained as a result of the traffic stop; (2) that the trial court abused its discretion in admitting into evidence telephone calls that had been intercepted by the court-ordered wiretap; and (3) that the trial court abused its discretion by admitting cocaine into evidence when the State

---

[1] The Sentence Order issued October 29, 2013 merged criminal action number IK12-09-0217, Criminal Solicitation 2nd with number IK12-09-0216, Conspiracy 2nd pursuant to 11 *Del. C.* 206(b)(2). On December 16, 2014 a Corrected Sentence Order was signed by Resident Judge Graves. The corrections were the removal of number IK12-09-0212, Tier 5 Possession which was merged with number IK12-06-0541, DDeal. Charge number IK12-06-0541 was amended from DDeal Tier 2 + AF to DDeal Tier 4.

2

failed to establish an adequate chain of custody.[2]

At oral argument Brown's counsel informed the Supreme Court that one of the Office of Chief Medical Examiner's ("OCME") employees who had handled the evidence seized in Brown's case had been indicted of alleged improper practice. The Supreme Court remanded the case so that Brown could file a Motion for New Trial. On remand, the Superior Court denied the motion. Back at the Supreme Court the parties filed supplemental briefs concerning the denial of the new trial motion. The Delaware Supreme Court found no merit in any of the claims and affirmed Brown's conviction and sentence on June 17, 2015 stating in part:

> We conclude that the Superior Court was within its discretion to deny Brown's motion for a new trial. Although sloppy evidence-handling practices and potentially worse behavior by OCME employees is disappointing and regrettable, there is no rational basis to infer that any sloppiness or other improprieties at OCME resulted in any injustice to Brown. Brown admits that he possessed cocaine in more than sufficient amount to justify his convictions, and there was overwhelming evidence of his guilt separate from the drugs seized from him. Accordingly, we affirm the Superior Court's denial of his motion for new trial.[3]

Brown filed his initial postconviction motion on October 2, 2015 and several amended motions thereafter. Ultimately Christopher S. Koyste, Esquire ("Appointed

---

[2] *Brown v. State*, 117 A.3d 568, 574 (2015).

[3] *Brown* at 570-571.

3

Counsel") was appointed to represent Brown in his postconviction motion pursuant to Superior Court Criminal Rule 61. After an extremely thorough and conscientious review of the facts, the record and the law in the case, Appointed Counsel filed a motion to withdraw as counsel having concluded that the motion was wholly without merit and that no meritorious grounds for relief existed. Brown was sent a copy of the motion to withdraw and given 30 days to file a response.

Next Brown moved to supplement his Rule 61 motion on April 13, 2017. Appointed Counsel's motion to withdraw was granted on May 9, 2017. After several revised brief schedules the matter finally completed briefing and was sent for decision.[4]

## FACTS

Following are the facts as set forth by the Delaware Supreme Court:

> Brown's arrest resulted from an extensive police investigation into an alleged drug trafficking syndicate run by Galen Brooks.[FN 2] In addition to using undercover purchasers and confidential informants, the police obtained a warrant to wiretap Brooks' cell phones, and conducted video surveillance Brooks' house and physical surveillance of the entrance to his neighborhood. On May 31, 2012, officers listened to four calls, in which Brooks

---

[4] Brown's Trial Counsel, Sandra W. Dean, Esquire passed away before this matter was filed therefore the Court and the parties did not have the benefit of her input concerning Brown's allegations of ineffective assistance of counsel. Nevertheless, Appointed Counsel concluded that Ms. Dean represented Brown in an appropriate and effective manner based on the record.

4

and an unknown man arranged for the man to buy cocaine from Brooks. In the last call, which took place at 5:35 p.m., the man told Brooks that he would be at Brooks' house in approximately seven minutes to pick up the drugs. The officers listening to the telephone conversations, including Sergeant Lance Skinner of the Delaware State Police, relayed that information to the officers conducting surveillance. Sergeant Skinner then travelled to the area near Brooks' house to wait for the unknown man.

At the same time, Detective Jordan Miller of the Dover Police Department was conducting video surveillance of Brooks' house. Detective Miller watched another man, John Price, leave Brooks' home at 5:48 p.m.[FN3] The police were familiar with Price's voice and telephone number from the investigation and believed that Price was not the unknown man from the four telephone calls. Three minutes after Price left, or roughly sixteen minutes after the fourth phone call, and unknown woman and a man later identified as Ansara Brown arrived at Brooks' home. Brooks came out to meet them and they went around the side of the house, out of view of the camera. Approximately five minutes later, Brown and the woman left Brooks' home. Brooks himself left a minute later, indicating to the police that he was no longer waiting for the unknown man from the telephone call to arrive. Detective Miller informed the other officers involved with the investigation.

Sergeant Skinner followed Brown's vehicle in his patrol car for two to three miles after it left Brooks' house. Sargent Skinner then stopped the vehicle and asked

5

Brown to step outside on the pretext that there was a problem with his registration. Sergeant Skinner testified at Brown's trial that he recognized Brown's voice from the telephone calls earlier that day.[FN4] when Brown stepped out of his vehicle, Sergeant Skinner arrested him. He then conducted a pat-down search of Brown and found what he described as two bags of cocaine contained in a pouch in brown's front pocket. One of the bags contained three smaller bags, for a total of five bags. Sergeant Skinner transported the drugs to the police station, where two other officers, sergeant Jeremiah Lloyd and Master Corporal Jeffrey Lavere, field-tested and weighed the contents and sealed the bags to transport to the Office of the Chief Medical Examiner. According to Sergeant Skinner's testimony at trial, three of the bags contained crack, and one of the bags contained powder cocaine.[FN5] There was also a small amount of powder cocaine in the bag that contained the three smaller bags. The Delaware State Police Evidence Report indicated that the bags together contained approximately 1.2 grams of powder and 20 grams of crack cocaine.[FN6]

Sergeant Skinner searched Brown again at the police station and found a small bag of marijuana and a pair of brass knuckles in Brown's pocket. In a statement to the police, Brown admitted that he had an ounce of cocaine (approximately 28 grams) and that he intended to sell it. He gave the police his cell phone number, which matched the one captured on the wiretap. After he was released, Brown was also recorded on a wiretap speaking on the phone with Brooks, describing his arrest and the seizure of the drugs, and assuring Brooks that he would not 'fall short.'[FN7]

Ultimately, fourteen defendants were indicted for their involvement in the drug syndicate, including Brooks and Brown.[FN8] Brown moved to sever his case from the other defendants, which the Superior Court granted. Brown also filed two pre-trial motions, one to suppress the evidence seized from him following his arrest and another to suppress the evidence from the wiretaps. The Superior Court denied both of those motions.

At Brown's trial, Sergeant Skinner, Sergeant Lloyd, and Master Corporal Lavere all testified about the cocaine seized from Brown. Despite the evidence report filed by Sergeant Lloyd and Master Corporal Lavere indicating that Sergeant Skinner had seized 1.2 grams of powder cocaine from Brown, Sargent Skinner testified that he had collected 8 grams of powder cocaine from Brown, in addition to the three bars of crack cocaine.[FN9] Patricia Phillips, the OCME forensic examined responsible for testing the cocaine seized from Brown, also testified at trial. She stated that when she received the envelope containing the drugs seized from Brown, the seal was intact and there was no sign of tampering. Phillips' report indicated that there were five bags of cocaine, but in different quantities than the officers indicated: one bag of 'white powder' containing 7.03 grams; one bag of 'white powder' containing 0.67 grams; and three bags of an 'off white chunky substance' containing approximately 15.53 grams.[FN10]

During Phillips' testimony, Brown objected to the admission of the cocaine evidence. He contended that the discrepancies between the Police Evidence Report and the Medical Examiner's report suggested that there were concerns with the integrity of

7

the evidence, and thus its admissibility.[FN11] In particular, Brown emphasized that the police officers' account of which bags contained crack or powder did not match the Medical Examiner's report.[FN12] Brown's attorney requested that she be able to question Phillips about the 'transport from Troop 3 to the medical examiner's office.'[FN13] The Superior Court denied that request, noting that 10 *Del. C.* § 4331 defines the chain of custody as the 'seizing officer, the packaging officer, and the medical examiner,' all of whom had testified at Brown's trial, which Brown's attorney conceded.[FN14]

In responding to Brown's objection, Phillips clarified in a sidebar with the superior Court and both attorneys that her references to particular bags were not intended to correspond to the officers.[FN15] The State pointed out that both reports described three bags of crack cocaine and one bag of powder cocaine, in addition to the outer bag, which contained a small amount of powder cocaine, although there were weight differences between the reports of powder and crack.[FN16] Phillips also explained during the sidebar that 'sometimes ... powder ... clumps together and it appears to be a chunky substance when it is more powdery.... My description is that it's chunky. That's not a clinical or chemical differentiation. It is a description of how the evidence appears.'[FN17] She noted that because Delaware's drug laws do not differentiate between powder and crack cocaine, she did not specifically delineate the form of the cocaine beyond its appearance in her report.[FN18] Phillips also explained that she did not weigh the drug packaging, which the State offered as an explanation for the discrepancy between the weight of the powder cocaine she testified to compared to Sergeant Skinner's testimony, even though the total amount of cocaine she reported (23.23 grams) was more than that reported by the police (21.2 grams). The Superior Court determined that the drug evidence

was admissible, noting that 'I don't think there's any reasonable possibility that the drugs got mixed up with some other drugs that were not on [Brown's] person into those envelopes....'[FN19]

Following a three day trial, Brown was convicted by the jury of one count each of drug dealing at Tier 4, aggravated possession of a controlled substance, carrying a concealed deadly weapon, possession of a deadly weapon during the commission of a felony, conspiracy in the second degree, criminal solicitation in the second degree, and possession of marijuana. The Superior Court sentenced Brown as a habitual offender to two life sentences for the charges of drug dealing and aggravated possession of a controlled substance. Brown was sentenced to twenty-nine years and six months' imprisonment, suspended after 27 years, on the remaining charges.

[FN2]    *See State v. Brooks*, 2013 WL 4051049 (Del. Super. July 30, 2013); *see also Ayers v. State*, 97 A.3d 1037, 1038 (Del. 2014.)

[FN3]    The record does not indicate the time that price arrived at Brooks' house.

[FN4]    App. To Opening Br. At 66 (Trial Test. Of Skinner, Sept. 9, 2013).

[FN5]    *Id.* At 74.

[FN6]    Opening Br., Ex. F (Delaware State Police Evidence Report).

[FN7]    *State v. Brown*, ID # 1205025968A, at 5 *Del. Super. Dec. 18, 2014) (letter order).

[FN8]    *See* App. To Opening Br. At 8-47 (Indictment by the Grand

Jury).

FN9　App. To Opening Br. at 143 (Trial Test. Of Skinner, Sept. 9, 2013).

FN10　App. To Supp Opening Br. At 67 (Controlled Substances Laboratory Report).

FN11　App. To Answering Br. At 173 (Tr. Of Arguments Sept. 10, 2013).

FN12　*See* App. To Answering Br. At 161-63 (Tr. Of Arguments, Sept. 10, 2013).

FN13　*Id*. At 175.

FN14　*Id*. During oral argument before this Court, the State's attorney suggested that Brown requested to cross-examine James Woodson, the OCME courier who handled the drugs seized from Brown and who was later indicted for allegedly tampering with evidence. See Oral Arg't Tr. (May 28, 2014), *available at* http://courts.delaware.gov/supreme/oralarg/video/2014-05-28_603_2013_Brown_v_State_of_Delaware.mp4. Based on the transcript of the trial in the record, though, it does not appear that Brown ever suggested that Woodson should testify. See App. To Answering Br. At 175 (Tr. Of Arguments Sept. 10, 2013). *Cf. Milligan v. State*, 116 A 3d 1232, 1237-40, 2015 WL 3622880, at *4-5 (Del. 2015) (discussing the requirements to establish a chain of custody under Delaware and federal law, and observing that the U.S. Supreme Court held in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.C. 2527, 174 L.Ed.2d 314 (2009), that "not every individual who may have relevant testimony for the purpose of establishing chain of

10

custody must appear in person as part of the prosecution's case").

FN15   *See id.* At 170.

FN16   *See id.* At 171-72.

FN17   App. To Opening Br. At 167-68 (Tr. Of Arguments, Sept. 10, 2013).

FN18   *Id.* At 167.

FN19   *Id.* At 178.

## BROWN'S CONTENTIONS

In his original and first amended motion, Brown raises the following grounds for relief each of which was thoroughly addressed by Appointed Counsel in his Motion to Withdraw:

Ground one:   Illegal Search and Seizure.
Trial Court erred as a matter of law when it denied Brown's motion to suppress as police violated the Delaware Constitution when they stopped him based on the pretext of a motor vehicle violation for a non-traffic related investigation.

Ground two:   Freestanding Innocence Claim.
Based upon newly discovered scientific evidence is cognizable in a postconviction

11

superior court criminal rule 61(i)(5).

Ground three:     Ineffective Assistance of Counsel.
Trial lawyer failure to challenge and establish the probable cause of warrant and filing proper motions, resulting in Brady material subjected defendant to a more lengthy sentence.

After the filing of Appointed Counsel's Motion to Withdraw Brown filed several "supplements" raising additional claims that the State in its response characterized as follows:

(A)     Illegal Sentencing Scheme,

(B)     Dash cam footage,

C)     Sentencing timing,

(D)     Chain of custody for testing,

(E)     DMV record,

(F)     OCME performance deficiency, and

(G)     Record expansion.

## DISCUSSION

Under Delaware law, the Court must first determine whether Brown has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may

12

consider the merits of the postconviction relief claims.[5]   Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[6] Brown's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion.   As this is Brown's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates:  (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[7] The bars to relief are inapplicable to a jurisdictional challenge or "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[8]

Brown's third ground for relief in his original and Amended motion and his argument concerning his sentence as an habitual offender Argument A are premised to some extent on allegations of ineffective assistance of counsel.  Therefore Brown has alleged sufficient cause for not having asserted these grounds for relief at trial and

---

[5] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

[6] Super. Ct. Crim. R. 61(i)(1).

[7] Super. Ct. Crim. R. 61(i)(3).

[8] Super. Ct. Crim. R. 61(i)(5).

13

on direct appeal.

Brown's first ground for relief concerning suppression issues and his Arguments B, E and F are simply are simply restatements of the argument[s?] he previously raised at trial and in his direct appeal. Superior Court Criminal Rule 61(i)(4) bars any ground for relief that was formerly adjudicated unless reconsideration of the claim is warranted in the interest of justice.[9] Brown raised these claims before and they were found meritless. Brown has made no attempt to argue why reconsideration of these claims are warranted in the interest of justice. The interest of justice exception of Rule 61(i)(4) has been narrowly defined to require that the movant show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish" him.[10] Brown has made no attempt to demonstrate why these claims should be revisited. This Court is not required to reconsider Brown's claims simply because they are "refined or restated."[11] For this reason, those grounds for relief should be dismissed as previously adjudicated under Rule 61(i)(4).

Brown's second ground for relief and Arguments C, D and G were not previously raised and he has given no reason for the failure to have raised them earlier. They are therefore clearly barred by Superior Court Criminal Rule 61(i)(3)

---

[9] Super. Ct. Crim. R. 61(i)(4).

[10] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996) (quoting *Flamer v. State*, 585 A.2d 726, 746 (Del. 1990)).

[11] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990).

14

for failure to demonstrate cause and prejudice for his failure to have raised them earlier.

Brown's ineffective assistance of counsel claims are not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Brown, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[12] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[13]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant

---

[12] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[13] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

15

must engage in the two part analysis enunciated in *Strickland v. Washington*[14] and adopted by the Delaware Supreme Court in *Albury v. State.*[15]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[16] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings would have been different, that is, actual prejudice.[17] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[18]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[19] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect

---

[14] 466 U.S. 668 (1984).

[15] 551 A.2d 53, 58 (Del. 1988).

[16] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[17] *Id.*

[18] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[19] *Strickland*, 466 U.S. at 687.

will often be so, that course should be followed."[20] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[21] Furthermore, Brown must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[22]

Turning briefly to Brown's specific claims he makes two allegations that Trial Counsel acted ineffectively, including claims that she failed to call the technician, Mr. Woodson from the OCME who had mishandled the drug evidence and that she failed in her representation concerning Brown's being sentenced as an habitual offender. However, Brown fails to identify how he was prejudiced by any of these alleged deficiencies. As Appointed Counsel noted in his Motion to Withdraw concerning the failure to call Mr. Woodson "Unfortunately, this possible claim has no merit as the overwhelming evidence presented at trial rendered any claim of prejudice from Trial Counsel's ineffectiveness meritless." The failure to establish prejudice is fatal to Brown's claim and it must be denied.

---

[20] *Id.* at 697.

[21] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[22] *Strickland*, 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

Brown's second ground asserts that the State violated its *Brady*[23] obligations by failing to disclose exculpatory and impeachment information regarding the OCME.[24] Unfortunately for Brown, even if the State violated its *Brady* obligations, there could be no prejudice as the State presented overwhelming evidence at trial.

A *Brady* violation is a Constitutional claim based upon a violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.[25] Similarly, Article I Section 7 of the Delaware Constitution states in relevant part that 'nor shall he or she be deprived of life, liberty or property, unless by the judgment of his or her peers or by the law of the land."[26] The United States Supreme Court in *Brady* held that "suppression by the prosecution of evidence favorable to an accused violates due process when the evidence is material to either guilt or punishment, irrespective of good faith or bad faith of the prosecutor."[27] *Brady* requires the prosecutor disclose all materially exculpatory and impeachment evidence.[28] The timing of disclosure must

---

[23] *Brady v. Maryland*, 373 U.S. 83 (1963).

[24] A256.

[25] *Brady* at 87.

[26] Del. Const. Art. I, § 7,

[27] 373 U.S. at 87.

[28] *Id.*; *U.S. v. Bagley*, 473 U.S. 667, 676 (1985); *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

be made in order for defense counsel to be able to use the material effectively.[29]

Courts perform a three prong analysis to determine if a *Brady* violation occurred.[30] A *Brady* violation requires: 1) exculpatory or impeaching evidence exists that is favorable to Defendant; 2) "that evidence is suppressed by the State," and 3) Defendant is prejudiced by the suppression. If each of these prongs is met, a *Brady* violation has occurred and the verdict must be vacated.[31] Under prong three, a criminal defendant suffers prejudice if there is a reasonable probability that had the *Brady* material been disclosed to the defense, the result of the proceeding would have been different.[32] "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial."[33]

---

[29] *Cooper v. State*, 992 A.2d 1236 (Del. 2010) (*See also Rose v. State*, 542 A.2d 1196, 1199 (Del. 1988) ("[w]hen a defendant is confronted with delayed disclosure of *Brady* material, reversal will be granted only if the defendant was denied the opportunity to use the material").

[30] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 282-82 (1999)).

[31] *Id.*

[32] *Bagley*, 473 U.S. at 682.

[33] *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678); *see also Strickler*, 527 U.S. at 289 (petitioner must demonstrate "'a reasonable probability' that the result of the trial would have been different if the suppressed [information] had been disclosed to the defense").

Unfortunately for Brown, there is not a reasonable probability of a different result if the State had complied with its *Brady* obligations due to the overwhelming evidence presented at trial. At trial, the State introduced the recorded phone calls between Brown and Brooks which detailed an agreement between Brooks and Brown to engage in a drug transaction at Brooks' residence.[34] The video surveillance admitted into evidence showed, consistent with the last phone call between Brown and Brooks, Brown arriving at Brooks' residence and interacting with Mr. Brooks.[35] The surveillance video also showed that approximately five minutes after arriving Brown left Brooks' residence and then a minute later Brooks left his residence.[36]

Additionally, the State admitted into evidence Brown's own statement to law enforcement. In this statement, Brown specifically admitted to possessing an ounce of cocaine and described to law enforcement his intent to re-sell the drugs.[37] Also during his statement, Brown provided law enforcement his cell phone number which matched the phone number used by the "then unknown male" to arrange a drug transaction with Brooks.[38]

Furthermore, the State introduced into evidence a recorded wiretap phone call

---

[34] *Brown*, 117 A.3d at 571; A13-20.

[35] *Id.* At 571; A20, A57-60, A61-62.

[36] *Id.*

[37] *Id.* At 572; A21-27, A145-46.

[38] *Id.* At 572.

between Brown and Brooks that took place after Brown was released from custody. During this call, Brown could be heard describing his arrest and the seizure of the drugs.[39] It is also worth noting that the alleged cocaine recovered from Brown's person was retested by NMS Labs and determined to be cocaine.[40]

It is apparent that there was overwhelming evidence presented at trial. As such it is highly unlikely that the State's disclosure of exculpatory and impeachment information regarding the reliability of the OCME's work product and employees would have changed the result.[41] Thus, this claim has no merit.

Brown's Arguments B, E and F were argued during trial and/or direct appeal. These are procedurally barred pursuant to Superior Court Criminal Rule 61(i)(4). Argument G, the Record Expansion request, contains documents from a different case. It appears to be a discovery response in a case against Jamar Campbell, who was not a co-conspirator.

Brown's Argument D complains that the State did not prove chain of custody for the re-testing of the cocaine at NMS Labs in Pennsylvania. The State did not enter the NMS Labs report into evidence during a trial. Rather, the re-testing was ordered *sua sponte* when evidence of the OCME wrongdoing came to light. The State provided the Court with the report as requested. The Court was the custodian of the

---

[39] *Id.* At 572; A28-31; A158-59.

[40] *Id.* At 575; A227-29.

[41] *Id.* At 581.

21

cocaine at the time of the re-testing. The cocaine could not be released to the officer without a Court Order. The NMS Labs report was consistent with the OCME report.

Brown's Argument C suggests issues with the timing of sentencing. According to the Superior Court Criminal Docket, Brown was sentenced on October 29, 2013. The sentence was docketed on October 30, 2013. The habitual declaration was docketed on October 31, 2013. This claim is without merit.

Brown's Argument A complains about the declaration as an habitual offender pursuant to 11 *Del. C.* §§ 4214(a) and (b). In the State's Motion to have Brown declared an habitual offender, the motion only asked for the sentencing under subsection (b). However, the motion listed four felony convictions and included certified convictions for each. During Brown's Sentencing hearing, the Court declared him an habitual offender and sentenced Brown to Life on both Drug Dealing and Aggravated Possession.[42] The Court then sentenced Brown, pursuant to § 4214(a), on Conspiracy 2nd Degree and Possession of a Deadly Weapon During the Commission of a Felony to an aggregate 27 years Level V.

Brown asserts the sentencing pursuant to subsection (a) violated his due process rights because the State's motion only sought sentencing under subsection (b). Brown says this subjected him to a longer sentence. There can be no sentence longer than Life. The State's motion provided the Court with enough certified convictions for designation under either or both subsections. This claim is without

---

[42] The sentences for Drug Dealing and Aggravated Possession merged in December 2014.

*State v. Brown*
ID No. 1205025968A
February 2, 2018

merit.

### CONCLUSION

After reviewing the record in this case, it is clear that Brown has failed to avoid the procedural bars of Superior Court Criminal Rule 61(i). A review of Appointed Counsel's motion to withdraw and the record clearly shows that his Trial Counsel represented Brown in a competent fashion and was not ineffective. Additionally, Brown has failed to demonstrate any concrete prejudice. Consequently, I recommend that Brown's motion be denied as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice and previously adjudicated under Superior Court Criminal Rule 61(i)(4).

_____
Commissioner Andrea M. Freud

AMF/dsc
oc: Prothonotary
cc: Honorable Jeffrey J Clark
    Nicole S. Hartman, Esquire
    Christopher S. Koyste, Esquire
    Ansara M. Brown, VCC

23