IN THE SUPREME COURT OF THE STATE OF DELAWARE

ROBERT L. JOHNSON, § 
§ No. 353, 2023
Defendant Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID Nos. 2108005127 &
STATE OF DELAWARE, § 2109009852 (N)
§
Appellee. §

Submitted: August 7, 2024
Decided: September 10, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

After consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record on appeal, it appears to the Court that:

(1) On March 22, 2023, a Superior Court jury found the appellant, Robert L. Johnson, guilty of disregarding a police officer's signal and other traffic offenses in Criminal ID No. 2108005127. Sentencing was postponed pending Johnson's trial on more serious charges in Criminal ID No. 2109009852. On June 29, 2023, a Superior Court jury found Johnson guilty of multiple drug offenses in Criminal ID No. 2109009852. The Superior Court sentenced Johnson for both cases to more than sixty years of Level V incarceration, suspended after eleven years for decreasing levels of supervision. This is Johnson's direct appeal.

(2)     The evidence presented at the trial in Criminal ID No. 2108005127 established that in August 2021 there was an outstanding arrest warrant for Johnson in Maryland.  On August 10, 2021, Elkton police officers followed a white Dodge Challenger with a Maryland temporary tag number from Elkton, Maryland to Newark, Delaware.  In Newark, the Challenger passed the vehicle of Detective Dennis LaSassa, who recognized Johnson sitting in the driver's seat of the Challenger.

(3)     Newark police officers began following the Challenger.  Corporal Carter McKennon activated his lights and siren to initiate a traffic stop of the Challenger.  When the Challenger pulled over, Corporal McKennon got out of his vehicle, approached the Challenger, and shouted for the Challenger's driver to put his hands outside the window.  The driver initially obeyed, but then drove off at a high rate of speed.  Corporal McKennon followed the Challenger as it ran a red light, traveled at speeds of over 100 miles per hour, and changed lanes without properly signaling.  Eventually the police lost sight of the Challenger.

(4)     Later that day, a New Castle County police officer found the Challenger's bumper, which had separated from the car, and the Challenger on a property in New Castle.  The Challenger's engine was running, the driver's door was open, and the driver's seatbelt was still buckled and clinched against the seat, indicating the driver had not been wearing a seatbelt while driving.  Johnson's

2

fingerprints were found on the interior and exterior driver's side of the Challenger. DNA testing of the Challenger was inconclusive; multiple contributors were found and Johnson could not be included or excluded.

(5) Johnson did not testify. During cross-examination of the State's witnesses and closing arguments, Johnson's counsel questioned Detective LaSassa's identification of Johnson as the driver of the Challenger and argued that Johnson could have left his fingerprints in the Challenger, which was not registered to him, before August 10, 2021. The jury found Johnson guilty of disregarding a police officer's signal, resisting arrest, leaving the scene of an accident, driving with a suspended license (which the State later dismissed), reckless driving, failure to maintain a lane, aggressive driving, disregarding a red light, failure to wear a seatbelt, failure to report an accident, and unsafe speed. The jury found Johnson not guilty of driving without proof of insurance.

(6) The evidence presented at the trial in Criminal ID No. 2109009852 established that in September 2021 there was an outstanding warrant for Johnson. Delaware and Maryland police officers were conducting surveillance of a house rented by Johnson's aunt and uncle that was located at 624 Nesting Lane in Middletown, Delaware. On September 14, 2021, police followed a black Nissan Rogue, which was rented by someone other than Johnson, from the driveway of 624

3

Nesting Lane to a nearby shopping center. After the Nissan Rogue left the shopping center, it pulled over and a Maryland police officer saw Johnson in the driver's seat.

(7) On the morning of September 20, 2021, New Castle County police came to 624 Nesting Lane to arrest Johnson. The police surrounded the house and directed all of the occupants to come out the front door. After ten or fifteen minutes, adults and children came out through the front door and garage. Johnson jumped out of a first-floor window on the side of the house and was arrested.

(8) The police found two cell phones on Johnson and another cell phone in the yard. In a search of the Nissan Rogue, the police found a digital scale and a plastic baggie containing white powder. The police also searched the house. The police found a backpack, three empty vacuum-sealed bags, and a baggie containing a green, leafy substance in an upstairs bathroom. In the toilet, there were eight baggies containing a white, crystal-like substance. Inside the backpack, there was paperwork, a baggie containing a white, crystal-like substance, and a baggie of 77 wax paper baggies containing an off-white, powdery substance. Another digital scale was found in the bedroom adjoining the bathroom.

(9) A chemist testified that: (i) the baggie in the Nissan Rogue contained 14.2 grams of cocaine; (ii) the baggie in the bathroom with the green, leafy substance contained 15.7 grams of marijuana; (iii) the baggies in the toilet contained 218.8 grams of methamphetamine; (iv) the baggie in the backpack contained 8.9 grams of

4

methamphetamine; and (v) the 77 wax paper baggies in the backpack contained 2.3 grams of heroin and fentanyl. A police officer opined that the variety of drugs, the digital scales, the multiple cell phones, the quantity and packaging of the heroin, the quantity and packing of the methamphetamine, and the quantity of cocaine were consistent with drug dealing. He also testified that vacuum-seal bags like the ones found in the bathroom were commonly used to store marijuana so that the odor was not detectable. A fingerprint expert testified that Johnson's fingerprints appeared on one of the empty vacuum-sealed bags in the bathroom and the paperwork in the backpack.

(10) Johnson testified that multiple relatives, including his aunt and uncle, lived at 624 Nesting Lane, but that he did not live there. He also denied ownership or knowledge of the drugs, suggesting that his unemployed aunt and uncle were responsible for the drugs. A police officer testified that Johnson's uncle was suspected of drug trafficking and that Johnson's aunt had previous drug-related convictions. The jury found Johnson guilty of drug dealing (methamphetamine), aggravated possession (methamphetamine), drug dealing (heroin), drug dealing (marijuana), and drug possession (marijuana). The jury found Johnson not guilty of drug dealing (cocaine), aggravated possession (cocaine), and endangering the welfare of a child. The jury was unable to reach a verdict on the charge of resisting arrest.

(11) On appeal, Johnson's appellate counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Johnson of the provisions of Rule 26(c) and provided Johnson with a copy of the motion to withdraw and the accompanying brief.

(12) Counsel also informed Johnson of his right to identify any points he wished this Court to consider on appeal. Johnson has raised points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(13) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(14) Johnson raises four arguments for this Court's consideration: (i) his fingerprints appeared in the Challenger because he had been in the car before August 10, 2021, but his cousin actually owned the car, had reported it stolen, and was never

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

contacted by anyone before trial; (ii) his fingerprints did not appear on any of the baggies containing drugs or the digital scales found at 624 Nesting Lane; (iii) there was no presentence investigation ("PSI") in Criminal ID No. 2109009852; and (iv) the State referred to Maryland charges he faced at sentencing, but most of those charges were later dropped and should not have affected his sentencing. After careful review, we find no merit to these arguments.

(15) We construe Johnson's first argument as a claim that there was insufficient evidence to support his convictions in Criminal ID No. 2108005127.[2] Generally, we review an insufficiency of evidence claim to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt.[3] Because Johnson did not move for a judgment of acquittal in the Superior Court, we review his claim for plain error.[4] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5]

---

[2] To the extent Johnson also claims that his trial counsel was ineffective for failing to call his cousin as a witness, we have consistently held that we will not consider ineffective assistance of counsel claims for the first time on direct appeal, and we decline to do so here. *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

[3] *Farmer v. State*, 844 A.2d 297, 300 (Del. 1990).

[4] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).

[5] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

(16)    There is no plain error here.  Johnson does not dispute that the driver of the Challenger committed the traffic offenses observed by police on August 10, 2021, but instead claims that he was not the driver.  Evidence that Johnson was the driver included Detective LaSassa's testimony that he saw Johnson driving the Challenger shortly before the unsuccessful traffic stop and the presence of Johnson's fingerprints on the driver's side of the Challenger.  Johnson claims that he left his fingerprints in the Challenger, which belonged to this cousin, before August 10, 2021, but the verdict shows that the jury rejected this argument.  Johnson did not raise the alleged theft of the Challenger in the Superior Court so we do not consider that claim for the first time on appeal.  Having considered Johnson's argument and the trial record, we conclude that the State presented sufficient evidence from which any rational juror could have found Johnson guilty of disregarding a police officer's signal, resisting arrest, leaving the scene of an accident, reckless driving, aggressive driving, unsafe speed, disregarding a red light, failure to maintain a lane, failure to report an accident, and failure to wear a seatbelt.

(17)    We construe Johnson's second argument as a claim that there was insufficient evidence to support his convictions in Criminal ID No. 2109009852.  To establish that Johnson was guilty of drug dealing (methamphetamine) under 16 *Del. C.* § 4752(a)(1), the State had to prove that he knowingly possessed with intent to

8

deliver twenty-five grams or more of methamphetamine.[6] For drug dealing (heroin) under 16 *Del. C.* § 4754, the State had to prove that Johnson knowingly possessed with intent to deliver heroin.[7] And for drug dealing (marijuana) under 16 *Del. C.* § 4754, the State had to prove that Johnson knowingly possessed with the intent to deliver marijuana.[8]

(18) In arguing that the absence of his fingerprints from the baggies containing the drugs means he could not be found guilty of drug dealing, Johnson disregards all of the other evidence. This evidence included (i) Johnson's presence at 624 Nesting Lane, (ii) paperwork with Johnson's fingerprints in the backpack that also contained 77 wax paper baggies of heroin and fentanyl totaling 2.3 grams and a baggie of 8.9 grams of methamphetamine, (iii) the backpack being in the upstairs bathroom where a baggie of marijuana was found and eight baggies of methamphetamine totaling 218.8 grams were found in the toilet, (iv) the digital scale in the bedroom adjoining the bathroom, and (v) testimony concerning the signs of drug dealing versus possession. A rational jury could find Johnson guilty beyond a

---

[6] 16 *Del. C.* § 4751C(1)(d) (defining Tier 3 quantity of methamphetamine as 25 grams or more); 16 *Del. C.* § 4752(a)(1) (declaring it is unlawful for a person to "[m]anufacture, deliver, or possess with intent to manufacture or deliver a controlled substance in a Tier 3 quantity").

[7] 16 *Del. C.* § 4754(a) (declaring it is unlawful for a person to "[m]anufacture, deliver, or possess with intent to manufacture or deliver a controlled substance").

[8] 16 *Del. C.* § 4754(a) (declaring it is unlawful for a person to "[m]anufacture, deliver, or possess with intent to manufacture or deliver a controlled substance").

reasonable doubt of drug dealing (methamphetamine), drug dealing (heroin), and drug dealing (marijuana).

(19) For aggravated possession (methamphetamine) under 16 *Del. C.* § 4752(a)(2), the State had to prove that Johnson knowingly possessed twenty-five grams or more of methamphetamine.[9] Based on Johnson's presence at 624 Nesting Lane, paperwork with Johnson's fingerprints in the backpack also containing a baggie of methamphetamine, and the backpack being in the upstairs bathroom where eight baggies of methamphetamine were found in the toilet, a rational jury could find Johnson guilty beyond a reasonable doubt of aggravated possession (methamphetamine). Given the baggie of marijuana in the bathroom where the backpack containing paperwork with Johnson's fingerprints was found, a rational jury could also find Johnson responsible for drug possession (marijuana).[10]

(20) As to Johnson's claim that there was no PSI in Criminal ID No. 2109009852, he is mistaken. After the first trial in Criminal ID No. 2108005127 ended, the Superior Court judge asked the parties whether a PSI was necessary given the nature of the offenses (mostly misdemeanors and traffic violations). The parties

---

[9] 16 *Del. C.* § 4751C(1)(d) (defining Tier 3 quantity of methamphetamine as 25 grams or more); 16 *Del. C.* § 4752(a)(2) (declaring it is unlawful for a person to "[p]ossess a controlled substance in a Tier 3 quantity").

[10] Although the jury found Johnson guilty of drug possession (marijuana), it appears that this was treated as a civil offense, carrying a $100.00 fine, under the version of 16 *Del. C.* § 4764(c)(1) in effect at the time of Johnson's arrest.

10

requested, and the judge agreed, that sentencing would not take place until after Johnson's trial on more serious charges in Criminal ID 2109009852.

(21) After the second trial in Criminal ID No. 2109009852 ended, the State requested a PSI. The Superior Court judge ordered a full PSI and ruled that she would preside over sentencing for both cases. The State's September 8, 2023 sentencing memorandum referred to the PSI, including aspects of the PSI that related to Criminal ID 2109009852. The Superior Court also referred to the PSI throughout sentencing on September 12, 2023. Johnson's claim that there was no PSI in Criminal ID No. 2109009852 is without merit.

(22) Finally, Johnson argues that the State referred to Maryland charges he faced at sentencing, but most of those charges were later dropped and should not have affected his sentencing. During sentencing, the State referred to several matters pending against Johnson in Maryland at the time of his crimes in Delaware, including a warrant for his violation of parole on an attempted first-degree murder conviction, a warrant for a shooting, and drug offenses. Johnson's trial counsel argued that Johnson should receive a lesser sentence because he already faced significant prison time for his crimes in Maryland.

(23) Our review of sentences is extremely limited.[11] If a sentence falls within statutory limits, as Johnson's sentences do, we consider only whether the

---

[11] *Mayes v. State*, 604 A.2d 839, 842 (Del. 1992).

sentence is based on factual predicates that are false, impermissible, or lack minimal reliability, judicial vindictiveness or bias, or a closed mind.[12]  It is not clear that the trial court judge considered charges Johnson faced in Maryland that were later dropped in sentencing him,[13] but even assuming she did, it was within the trial court's discretion to consider any relevant information relating to Johnson's behavior, "including pending criminal charges unrelated to the conduct for which he was convicted."[14]

(24)    There do appear to be two mistakes in the sentencing order.  First, the State informed the Superior Court that the methamphetamine convictions for drug dealing and aggravated possession merged, but also advised the Superior Court to impose two separate sentences for those convictions (twenty-five years of Level V incarceration, suspended after seven years for drug dealing and twenty-five years of Level V incarceration, suspended for two years of Level III probation).  The Superior Court did so and there is no indication of merger in the sentencing order.  Second, the sentencing transcript reflects that the Superior Court imposed a $25 fine for failure to maintain a lane, but the sentencing order shows a sentence of sixty days of

---

[12] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).

[13] Johnson does not identify the Maryland charges that he claims were later dropped.  Nor does he explain how the Superior Court was supposed to know which Maryland charges pending at the time of his sentencing would later be dropped.

[14] *Hassan-El v. State*, 2004 WL 220322, at *2 (Del. Jan. 23, 2004) (citing *Siple v. State*, 701 A.2d 79, 85 (Del. 1997)).  *See also Mayes v. State*, 604 A.2d 839, 842 (Del. 1992) ("Sentencing courts are specifically entitled to rely upon information regarding other, unproven crimes.").

Level V incarceration, suspended for one year of Level III probation. This matter must be remanded for the limited purpose of correcting the sentencing order.[15]

(25) This Court has reviewed the record carefully and has concluded that Johnson's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Johnson could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that this matter is remanded to the Superior Court for correction of the sentencing order. In all other respects, the judgment of the Superior Court is affirmed. The motion to withdraw is moot. Jurisdiction is not retained.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice

---

[15] *See, e.g., Puller v. State*, 2023 WL 1099179, at *2 (Del. Jan. 27, 2023) (remanding matter to the Superior Court for conformance of the sentencing order with the oral pronouncement of sentence); *Ayers v. State*, 97 A.3d 1037, 1041 (Del. 2014) (remanding for merger of drug dealing and aggravated possession charges).