# IN THE SUPREME COURT OF THE STATE OF DELAWARE

GERALD ROBERSON,

Defendant Below,
Appellant,

v.

STATE OF DELAWARE,

Appellee.

§
§
§
§
§
§
§
§
§
§
§
§

No. 16, 2025

Court Below: Superior Court
of the State of Delaware

Cr. ID No. 2301011545(N)

Submitted: January 14, 2026
Decided: April 9, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

James O. Turner, Jr., Esquire, (*argued*), Santino Ceccotti, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware, *for Defendant Below/Appellant*.

Carolyn S. Hake, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee*.

**SEITZ**, Chief Justice, for the Majority:

A Superior Court jury found Gerald Roberson guilty of sexually abusing his daughter. On appeal, Roberson argues that the court violated his constitutional right to confront his accuser by allowing his daughter to testify at trial remotely. He also contends that the prosecutor impermissibly vouched for the child's credibility during closing argument. For the reasons explained below, we affirm his convictions.

## I.

## A.

The salient facts are as follows. On June 23, 2022, Christina Hoskins, N.R.'s mother, brought eight-year-old N.R. to Nemours Children's Hospital for a sexual assault examination.[1] N.R. said that her father, Roberson, had molested her.[2] According to N.R., Roberson started sexually abusing her when she was either four or six-years-old. She testified that the most recent abuse occurred two months prior to the hospital visit.[3] The examination revealed no physical evidence of sexual abuse.[4]

---

[1] App. to Opening Br. at A109–12 [hereinafter A_] (Hoskins' Testimony), A120–22 (Sgt. Phillips' Testimony), 146–47 (N.R.'s Testimony).

[2] A159–60 (Carpenters' Testimony); A167–81 (N.R.'s Testimony); A218–21 (State's Closing Argument).

[3] A189–93 (Lagasse's Testimony).

[4] *Id.*

In a statement to the Children's Advocacy Center a week later, N.R. described in greater detail repeated sexual abuse by her father.[5] N.R. also explained that Roberson had threatened to "whoop" her if she told anyone about the abuse.[6] N.R. took this threat seriously, she testified, because Roberson had been violent towards her.[7] The State charged Roberson with three counts of rape-first degree, one count of sexual abuse of a child by a person in a position of trust first degree, and one count of continuous sexual abuse of a child.[8]

## B.

Prior to trial, the State moved under 11 *Del. C.* § 3514 to allow N.R. to testify at trial from a different room using closed-circuit television ("CCTV"). The statute provides that a child eleven years-old or younger may testify at trial outside the courtroom by video if the court finds that testifying in front of their alleged abuser would cause the child "serious emotional distress such that the[y] . . . cannot reasonably communicate."[9] The testimony is given live from a nearby room. Defense counsel is in the room and can cross-examine the witness. The defendant

---

[5] A167–81 (N.R.'s Testimony). The statement was given on July 1, 2022. *Id.*

[6] A180.

[7] A030 (Pre-Trial Hearing).

[8] A009 (Indictment).

[9] 11 *Del. C.* § 3514.

and jury can see the child on a screen while the child testifies, but the child cannot see the defendant or the jury.

Roberson opposed the State's motion. He argued that allowing N.R. to testify in a separate room by CCTV testimony would violate his right to confront his accuser "face to face" under Article I, Section 7 of the Delaware Constitution.[10] As a fallback position, Roberson claimed that he was entitled to a hearing to explore alternatives to remote testimony.[11]

At a hearing on the motion, the State called N.R.'s counselor as an expert witness.[12] The counselor testified that she recommended that N.R. testify remotely using CCTV because N.R. would suffer severe emotional distress and be unable to communicate in Roberson's presence.[13] The counselor also testified that she discussed with N.R. the possibility of in-courtroom testimony, but that the child was "extremely frightened" by Roberson.[14] On cross-examination, the counselor stated that she had not made such a recommendation before, she had not asked the child directly if having a supportive figure in the courtroom would help, and she had not

---

[10] A019–27 (Def.'s Mot. in Opp. to State's Mot. to Take Testimony of the Victim Outside the Courtroom Pursuant to 11 *Del. C.* § 3514).

[11] A024–25.

[12] A028 (Pre-Trial Hearing).

[13] A030.

[14] A031.

conducted mock questioning in a courtroom setting.[15] Following the hearing, the court requested submissions addressing the constitutionality of Section 3514, and the viability of other measures that would allow N.R. to testify in person before resorting to CCTV.[16]

After receiving the submissions, the Superior Court granted the State's motion. First, the court held that *McGriff v. State*[17] foreclosed the constitutional challenge to Section 3514.[18] In *McGriff*, our Court upheld the constitutionality under the federal and state constitutions of a related statute – 11 *Del. C.* § 3513 – that addresses a hearsay exception for child victim's or witness's out-of-court statements of abuse. The Superior Court noted that Section 3514 permits cross-examination, while that "right is non-existent when the testimony is offered under section 3513."[19] It reasoned:

> Surely, if the child's statements can be admitted against the accused with no cross examination at all as permitted under *McGriff* and section 3513, then the accusations can be admitted against the accused from a closed monitor from an adjoining courtroom from which defense counsel is able to cross examine the accuser on behalf of his client.[20]

---

[15] A032–34.

[16] A036.

[17] 781 A.2d 534 (Del. 2001).

[18] *State v. Roberson*, 2024 WL 302437, at *1–2 (Del. Super. Jan. 25, 2024) [hereinafter Op.].

[19] *Id.* at *2.

[20] *Id.*

Next, the court found that remote testimony by CCTV was warranted because "testify[ing] in the physical presence of the defendant would cause the child to suffer serious emotional distress such that she will not be able to reasonably communicate."[21] Specifically, the court relied on the State's representation that, in multiple meetings with N.R., "it has become clear that the victim is terrified of the defendant."[22] The court also cited the counselor's testimony that N.R. "is quite fearful of her father and would 'shut down' if required to communicate in front of him."[23] The court concluded that N.R. could testify at trial from a different courtroom using CCTV.

## C.

During closing argument, the prosecutor made the following statement:

> Defense counsel's probably going to get up and try to say this is made up, this didn't really happen. Why? Ask yourselves why an eight-year-old girl would want to deal with law enforcement, have an awkward conversation with her mom, go to the hospital, and do whatever that frog position is that [defense counsel] was cross-examining the FNE about, have her body exposed, be humiliated and then talk about it at length with a stranger in her room at the hospital and then two years later come in here and sit up there and testify. Did it look like she wanted to be here today?[24]

---

[21] *Id.*

[22] *Id.* at *1 (quoting A014 (State's Mot. to Take Testimony of the Victim Outside the Courtroom Pursuant to 11 *Del. C.* § 3514, ¶ 3)).

[23] *Id.* (quoting A033 (Pre-Trial Hearing)).

[24] A223 (State's Closing Argument).

At sidebar, Roberson's counsel requested a limiting instruction because the comment "sounded like it was approaching the possibility of credibility vouching."[25] The court denied the request and suggested that defense counsel "argue that the complainant is not credible for another reason" to rebut the statements.[26]

The jury found Roberson guilty on all counts. The court sentenced him to 125 years of unsuspended imprisonment.

## II.

On appeal, Roberson argues that Section 3514 violates Article I, Section 7 of the Delaware Constitution – the Delaware Confrontation Clause. That clause provides: "In all criminal prosecutions, the accused hath a right . . . to meet the witnesses in their examination *face to face* . . . ."[27] Reading the language literally, Roberson argues that he was entitled to be physically present in the same room as, and able to be seen by, his daughter when she testified.

We review alleged violations of the Delaware Constitution *de novo*.[28] There is, however, a "'strong judicial tradition in Delaware' that supports a 'presumption

---

[25] A236.

[26] *Id.*

[27] *Del. Const.* art. I, § 7 (emphasis added).

[28] *Rutledge v. Clearway Energy Group LLC*, --- A.3d ---, 2026 WL 548504, at *2 (Del. Feb. 27, 2026).

of the constitutionality of a legislative enactment.'"[29]  "We have emphasized that '[l]egislative acts should not be disturbed except in clear cases . . . and should not be declared invalid unless [the legislative enactment's] invalidity is beyond doubt.'"[30] Furthermore, the person "challeng[ing] the constitutionality of a statute has the burden of overcoming the presumption of its validity."[31]

## A.

In *Maryland v. Craig*,[32] the United States Supreme Court held that the Sixth Amendment's Confrontation Clause does not guarantee a literal face-to-face confrontation between a defendant and a witness.[33]  The Supreme Court reasoned that face-to-face confrontation must sometimes yield when necessary to further important public policy interests so long as the reliability of the testimony can be assured.[34]

In *Craig*, the Court upheld a Maryland law that allowed child abuse victims to testify by CCTV if testifying in person would cause "serious emotional distress."

---

[29] *State v. Baker*, 720 A.2d 1139, 1144 (Del. 1998).

[30] *Rutledge*, 2026 WL 548504, at *2 (alterations in original) (quoting *Justice v. Gatchell*, 325 A.2d 97, 102 (Del. 1974)).

[31] *Id.* (quoting *Justice*, 325 A.2d at 102).

[32] 497 U.S. 836 (1990).

[33] *Id.* at 844–50.

[34] *Id.* at 850.

Recognizing that *Craig* forecloses a federal constitutional challenge to Section 3514, Roberson turns to the Delaware Constitution. According to Roberson, the Delaware Constitution and its face-to-face requirement is broader than the federal Constitution. But as the Superior Court held here, our decision in *McGriff v. State* answers the state constitutional challenge to Section 3514.

In *McGriff*, our Court upheld the constitutionality of a similar statute, 11 *Del. C.* § 3513, under the federal and state constitutions.[35] Section 3513 permits the admission of "a child victim's prior out-of-court statements pertaining to instances of physical or sexual abuse . . . even though the child does not testify and is not available for cross-examination."[36] The court must find that the child is "unavailable." Unavailable means there is a "[s]ubstantial likelihood that the child would suffer severe emotional trauma from testifying . . . by means of . . . closed-

---

[35] *McGriff*, 781 A.2d at 537. The 2001 decision is often referred to as "*McGriff II*" because it followed this Court's 1996 decision of the same name. *See* 672 A.2d 1027 (Del. 1996). Our 1996 decision is not relevant here, so we refer to the 2001 decision simply as "*McGriff*."

[36] *McGriff*, 781 A.2d at 537.

circuit television . . . ."[37]  The court must also find that the out-of-court statements have "particularized guarantees of trustworthiness."[38]

The defendant in *McGriff* used the same line of attack as Roberson does here: "the Delaware Constitution should be interpreted to provide more protection than its federal counterpart . . . base[d] . . . on language . . . that provides the accused with the right to confront 'witnesses in their examination *face to face* . . . .'"[39]  But in *McGriff*, we declined to apply literally the face-to-face provision in the Delaware Constitution.  Instead, we hewed closely to the U.S. Supreme Court in *Craig*.  First, like *Craig*, we held that:

> A strict reading of the phrase "face to face" would virtually foreclose the State's ability to admit hearsay testimony against a criminal defendant, including those statements determined to be particularly trustworthy, substantially eliminating many exceptions to the rule prohibiting hearsay testimony.  As with the Federal Confrontation

---

[37] *Id.* at 542–53 (quoting 11 *Del. C.* § 3513(b)(2)a).  There are eight unavailability grounds.  The other seven grounds are:

1. The child's death;
2. The child's absence from the jurisdiction;
3. The child's total failure of memory;
4. The child's persistent refusal to testify despite judicial requests to do so;
5. The child's physical or mental disability;
6. The existence of a privilege involving the child;
7. The child's incompetency, including the child's inability to communicate about the offense because of fear or a similar reason . . . .

11 *Del. C.* § 3514(b)(2)a.

[38] *Id.*

[39] *McGriff*, 781 A.2d at 539 (emphasis in original) (quoting *Del. Const.* art. I, § 7); *see* Opening Br. 8 (arguing same).

Clause, a literal reading of the Delaware Confrontation Clause would "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme."[40]

Next, we observed that Delaware "has an interest in protecting young children from testifying" and "prosecuting individuals in cases of sexual and physical abuse involving children, cases that can be very difficult to prosecute."[41] Although "defendants in criminal cases have a significant constitutional right in ensuring that the testimony admitted against them is reliable," we held in *McGriff* that "[t]he purpose of the Confrontation Clause is upheld if the testimony at issue is found to carry the indicia of reliability."[42]

Finally, after exploring how several other states addressed their state constitution confrontation provisions, our Court concluded that Section 3513 did not violate the Delaware Constitution.[43] As we explained, Section 3513 "satisfies the 'face to face' requirement of the Delaware Constitution through its protection of the right of 'face to face' cross-examination on both the issue of the child's availability

---

[40] *McGriff*, 781 A.2d at 541 (quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980)).

[41] *Id.* at 542.

[42] *Id.*

[43] *Id.*

and the subsequent determination of trustworthiness of the proffered out-of-court statements."[44]

We agree with the Superior Court that *McGriff* answers the constitutionality of Section 3514 under the Delaware Constitution. *McGriff* upheld the constitutionality of a statute that provided lesser confrontation clause protections than Section 3514, the most prominent of which is the lack of cross-examination of the complaining witness. Under Section 3514, even though the jury hears the testimony by CCTV, the complaining witness is still subject to cross-examination. Section 3514 does not deny Roberson his confrontation rights under the Delaware Constitution.

## B.

Roberson's other attempts to evade *McGriff* are unconvincing. First, Roberson relies on *Van Ardsall v. State* where, after remand from the U.S. Supreme Court, we held that the trial court's absolute restriction on bias cross-examination violated the defendant's confrontation rights under the Delaware Constitution.[45] In a footnote, our Court stated in relation to the confrontation right that "the State constitution may be interpreted so as to provide greater rights to defendants."[46] That

---

[44] *Id.* at 541.

[45] 524 A.2d 3, 7 (Del. 1987).

[46] *Id.* at 7 n.5.

is true, but it does not advance Roberson's argument for reversal. We ruled later in *McGriff* that the face-to-face standard in the Delaware Constitution must yield to other important state interests if the trustworthiness of the statements is secured.[47]

Next, Roberson relies on decisions from other states interpreting their constitutional confrontation provisions. In three states, including Pennsylvania, courts have held that, as a matter of state constitutional law, a child witness must testify in the presence of the defendant.[48] Those courts, however, are in the minority. At least nine states allow the practice authorized by Section 3514 despite the words "face to face" in their confrontation clauses.[49] Our Court made its choice in *McGriff*, and has reaffirmed it since.[50]

---

[47] Roberson also relies on *State v. Xenidis*, 212 A.3d 292 (Del. Super. 2019). He cited the case as a Supreme Court decision. *See* Opening Br. 7. It is not, and on appeal, we declined to "address the . . . constitutional claims" raised. *Xenidis v. State*, 226 A.3d 1137, 2020 WL 1274624, at *2 (Del. 2020) (TABLE).

[48] *See State v. Warren*, 337 A.3d 265, 272, 274 (N.H. 2025) (applying "face to face" language to strike down statute like Section 3513 but also remarking that the right to confrontation "is not absolute").

[49] *People v. Phillips*, 315 P.3d 136 (Colo. App. 2012); *State v. Chisholm*, 825 P.2d 147 (Kan. 1992); *Commonwealth v. Willis*, 716 S.W.2d 224 (Ky. 1986); *State v. Naucke*, 829 S.W.2d 445 (Mo. 1992); *State v. Warford*, 389 N.W.2d 575 (Neb. 1986); *State v. Self*, 564 N.E.2d 446 (Ohio 1990); *State v. Foster*, 957 P.2d 712 (Wash. 1998); *Matter of Stradford*, 460 S.E.2d 173 (N.C. App. 1995)). In addition to these eight states, a ninth which Roberson claimed forbade closed circuit testimony, permits it if there is a "compelling need" for its use. *Commonwealth v. Johnson*, 631 N.E.2d 1002, 1007 (Mass. 1994).

[50] *Ayers v. State*, 97 A.3d 1037, 1040 (Del. 2014) ("[The defendant] says that the right to 'examine witnesses face to face' means just that. Under [his] view, the Delaware Constitution would preclude all hearsay evidence. This Court rejected the same argument in *McGriff v. State*[.]").

Finally, Roberson points to Justice Scalia's dissent in *Maryland v. Craig*. Justice Scalia and three other Justices disagreed with the Majority opinion. But a unanimous Delaware Supreme Court in *McGriff*, aware of the dissent in *Craig*, chose to follow the Majority opinion. We will not change course here. Section 3514 does not violate the Delaware Constitution.

C.

Our colleague in dissent argues that, when interpreting the Delaware Constitution, our Court in *McGriff* should have followed the dissenting opinion in *Maryland v. Craig*. According to the dissent, our Court disregarded Delaware's "face to face" language and relied instead on an "outdated Confrontation Clause analysis found in *Ohio v. Roberts*."[51] We have several responses.

First, the dissent treats Delaware's confrontation clause as an unyielding command even when a court has found that testifying in front of their alleged abuser would cause a child "serious emotional distress such that the[y] . . . cannot reasonably communicate."[52] It would leave the prosecution in an untenable position – forgo the child's testimony and drop charges, or have the child testify before their alleged abuser and cause the child claiming abuse such further "serious emotional distress" that they cannot "reasonably communicate." Section 3514 strikes the

---

[51] Dissenting Op. at 21.

[52] 11 *Del. C.* § 3514.

14

proper balance by allowing the witness to testify outside the presence of the alleged abuser while preserving the defendant's right to confront the witness through cross-examination.

Second, it is true that *McGriff* relied on *Ohio v. Roberts*, where the U.S. Supreme Court held that the Confrontation Clause does not bar the admission of an unavailable witness's statement if that statement bears "adequate 'indicia of reliability.'"[53] It is also true that the U.S. Supreme Court in *Crawford v. Washington* overruled *Roberts* and shifted the Confrontation Clause trustworthiness analysis from "indicia of reliability" to reliability through "the crucible of cross-examination."[54] But the shift in *Crawford* does not undermine Section 3514. The statute preserves the right to cross-examination.

Finally, the difference in word choice between the federal and state confrontation clauses is of no moment for this appeal. Although the Delaware Constitution uses the words "face to face," the U.S. Supreme Court in *Craig* also described the "irreducible literal meaning" of the federal Confrontation Clause as "a right to *meet face to face* all those who appear and give evidence at trial."[55]

---

[53] *Roberts*, 448 U.S. at 67.

[54] *Crawford*, 541 U.S. at 61 (emphasis added).

[55] *Craig*, 497 U.S. at 844 (quoting *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988)) (emphasis in original).

Roberson argues that the prosecutor engaged in misconduct by improperly vouching for the complaining witness during closing argument. The prosecutor told the jurors to ask themselves "why an eight-year-old girl would want to deal with" the hardships of the reporting process if she were not telling the truth.[56] The prosecutor also asked the jury to consider whether N.R. "look[ed] like she wanted to be here today?"[57] Roberson claims that the prosecutor's statements suggested that N.R. "would not have come forward with the allegations and gone through the investigation if it was not true."[58]

We employ a multi-step framework to review prosecutorial misconduct claims.[59] Whether by harmless error, when an objection was made, or by plain error, when no objection was made, we conduct a *de novo* review to determine whether misconduct occurred.[60] Here, Roberson's claim founders on this step.

---

[56] A223 (State's Closing Argument).

[57] *Id.*

[58] Opening Br. 15.

[59] *Watson v. State*, 303 A.3d 37, 43 (Del. 2023) ("[W]e first engage in a *de novo* review to determine whether the prosecutor's actions rise to the level of misconduct. . . . only if we find misconduct would we engage in plain error" or harmless error "analysis."); *Spence v. State*, 129 A.3d 212, 219 (Del. 2015) ("perform[ing] a de novo review of the record" for misconduct before engaging in further harmless error analysis).

[60] Where the issue is preserved, if misconduct occurred, we apply the factors from *Hughes v. State* to determine if it was harmless. *Spence*, 129 A.3d at 219 (citing *Hughes v. State*, 437 A.2d 559 (Del. 1981)). If so, we apply *Hunter v. State* to assess if the "statements are repetitive errors that

Roberson is correct that "[t]he State may not vouch, positively or negatively, as to the credibility of another witness and his truthfulness."[61]  And the prosecutor cannot "state[] or imply[] personal knowledge of the truth of their testimony 'beyond that logically inferred from the evidence presented at trial.'"[62]  But "[i]n closing argument, a prosecutor 'is allowed and expected to explain all the legitimate inferences of the [defendant's] guilt that flow from [the] evidence.'"[63]

Here, we are satisfied that no misconduct occurred.  At trial, Roberson drew attention to inconsistencies in N.R.'s testimony to undercut her credibility.  The State was entitled to respond to those attacks by asking the jury to consider whether, given the circumstances of the case, N.R. would have subjected herself to the criminal justice process to fabricate a story against the defendant.

---

require reversal because they cast doubt on the integrity of the judicial process."  *Id.* (quoting *Hunter v. State*, 815 A.2d 730, 733 (Del. 2002)).  Where the issue is not preserved, if misconduct occurred, "we engage in plain error analysis."  *Watson*, 303 A.3d at 43; *see also Suber v. State*, --- A.3d ---, 2026 WL 184867, at *6 (Del. Jan. 15, 2026) (reciting plain error standard); *Morales-Garcia v. State,* --- A.3d ---, 2026 WL 278899, at *7 (Del. Feb. 3, 2026) (applying *Suber* to a prosecutorial misconduct claim).

[61] *Rasin v. State*, 187 A.3d 1209, 2018 WL 2355941, at *2 (Del. 2018) (TABLE).

[62] *Caldwell v. State*, 770 A.2d 522, 530 (Del. 2001) (quoting *Saunders v. State*, 602 A.2d 623, 624 (Del. 1984)).

[63] *Benson v. State*, 105 A.3d 979, 984 (Del. 2014) (alterations in original) (quoting *Hooks v. State*, 416 A.2d 189, 204 (Del. 1980)).

Roberson tries to draw a comparison to the prosecutorial misconduct that occurred in *Heald v. State*.[64] There, we held that a prosecutor acted improperly by claiming that the reporting process "worked" because "the right person was brought to trial" and that the child accuser's testimony looked "painful."[65]

We fail to see the equivalence. Instead, the statements here are closer to *Cirwithian v. State*.[66] There, the defendant was accused of sexually molesting a minor family member – his sixteen-year-old niece. The complaining witness's "credibility was an issue at trial . . . ."[67] During closing argument, the prosecutor asked: "Why would [the complainant] make this story up?"[68] In affirming the conviction, we observed that:

> It may perhaps have been better form if the prosecutor had argued that the trier of fact . . . should ask himself why [the complainant] would fabricate such an accusation, but the argument as made stops short of a personal endorsement by the prosecutor of [the complainant's] credibility beyond what could be inferred from the evidence. It also stops short of an assertion by the prosecutor that [the complainant] was truthful, correct, or right.[69]

---

[64] 251 A.3d 643, 648–51 (Del. 2021) (reversing defendant's child sex abuse convictions due to prosecutor's improper comments during closing argument).

[65] *Id.* at 653–55.

[66] 252 A.3d 433, 2021 WL 1820771 (Del. 2021) (TABLE).

[67] *Id.* at *6.

[68] *Id.* at *5.

[69] *Id.* at *6.

The prosecutor here did not state or imply personal knowledge that the complainant's testimony was correct, or "right."  Instead, the prosecutor asked the jury "why [N.R.] would fabricate such an accusation," considering the evidence before the jury.[70]  The prosecutor did not engage in misconduct.

## IV.

We affirm the Superior Court's judgment.

---

[70] *Id.*

**TRAYNOR**, Justice, Dissenting.

I agree with my colleagues in the majority that the prosecution did not improperly vouch for the complaining witness during closing argument. But I disagree with the majority's conclusion that Section 3514 adequately protects an accused's right to face-to-face confrontation. Hence, I dissent.

The majority's decision rests in large part on a foundation laid by the United States Supreme Court's 5-4 decision in *Maryland v. Craig*[71] and this Court's decision in *McGriff v. State*.[72] True, as the majority points out, *Craig* forecloses a federal constitutional challenge to Section 3514. Yet to the extent that *Craig's* reasoning underpins this Court's decision in *McGriff*, it should not be immune from our critique. On that score, I am persuaded by the dissent in *Craig* that the Sixth Amendment establishes "a defendant's right to face his or her accusers in court"[73] and that, by concluding otherwise, the *Craig* majority improperly "subordinat[ed] . . . explicit constitutional text to currently favored public policy[.]"[74] Moreover, because the Delaware Constitution's Confrontation Clause is more explicit than the Sixth Amendment in its requirement of face-to-face

---

[71] 497 U.S. 836 (1990).

[72] 781 A.2d 534 (Del. 2001).

[73] *Craig*, 497 U.S. at 860 (Scalia, J., dissenting).

[74] *Id*. at 861.

confrontation, I would not follow *Craig* as an interpretive guide to Article I, Section 7.

Nor would I hew to *McGriff*, which draws its principal support from *Craig* and the outdated Confrontation Clause analysis found in *Ohio v. Roberts*.[75] Instead, I would adhere to the plain meaning of Article I, Section 7 of the Delaware Constitution, which provides that "[i]n all criminal prosecutions, the accused has a right . . . to meet the witnesses in their examination face to face[.]" The ordinary, everyday meaning of this clause is that the accused and the witness must be within each other's sight and presence. Section 3514 does not allow for such an encounter.

I am mindful of the laudable goal—described in *McGriff* as "accommodating the need to spare small children the emotional trauma sometimes associated with the trial process"[76]—that animated the enactment of Section 3514. But to borrow from Justice Scalia's dissent in *Craig*, for good or bad, Article I, Section 7 of the Delaware Constitution requires face-to-face confrontation, and we are not at liberty to ignore it.

---

[75] Under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) out-of-court statements could survive a Confrontation Clause challenge if they fell under "a firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." In *Crawford v. Washington*, 541 U.S. 36 (2004), *Ohio v. Roberts* was overruled. The *Crawford* court rejected *Roberts*'s "reliability" tests, holding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68–69.

[76] *McGriff*, 781 A.2d at 541.